**Elina UMEDMAN, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 2012.

Decided Sept. 13, 2012.

Vladislav Tinovsky, Trevose, for petitioner.

Teresa Heacock DeLeo, Assistant Counsel, Harrisburg, for respondent.

Thomas Klemm, Philadelphia, for intervenor New Hope Adult Day Care, LLC.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Elina Umedman (Umedman) petitions for review of the Unemployment Compensation Board of Review's (UCBR) January 20, 2012 order reversing the Referee's order, thereby denying Umedman unemployment compensation (UC) benefits. There are essentially four issues for this Court's review: (1) whether the UCBR's decision was supported by substantial evidence; (2) whether the UCBR erred in failing to consider the City Health Department's unwritten "closure prevention policy;" (3) whether the two month delay between the incident and Umedman's discharge bars a holding of willful misconduct; and (4) whether the UCBR violated Umedman's constitutional rights. We affirm.

Umedman was employed by New Hope Adult Day Care, LLC (Employer) in Philadelphia, as a social director from August 1, 2005 through May 4, 2011. Umedman also owned 25% of Employer's stock. Employer selected Umedman to become certified in Food Establishment Personnel Food Safety in order to satisfy requirements of the City of Philadelphia's (City), Department of Public Health (Health Department) and to be able to serve food to its clients. The Food Establishment Personnel Food Safety Certificate (Certificate) Umedman received reflects, on its face: "This certification may be revoked upon finding that the certified holder has not complied with the obligation or applicable regulations of Title 6 § 6–301 of the Philadelphia Health Code [Philadelphia Code]." Notes of Testimony, August 22, 2011 (N.T.) Emp. Ex. 1. It also clearly states: "This Certificate is Nontransferable," and "This Certificate *MUST* be publically displayed." N.T. Emp. Ex. 1. The certificate was displayed at Employer's premises, along with a food preparation license (License) issued to Employer by the City's Department of Licenses and Inspections. The License specifically states: "DISPLAY PROMINENTLY" and "THIS LICENSE IS GRANTED TO THE PERSON AND LOCATION FOR THE PURPOSE STATED ABOVE. IT IS SUBJECT TO IMMEDIATE CANCELLATION BY THIS DEPARTMENT FOR VIOLATIONS OF CITY ORDINANCES OR REGULATIONS. INQUIRIES 311 (215–686–8686)." N.T. Cl. Ex. 1.

On February 23, 2011, during Umedman's shift, Employer's Program Director, Lyudmila Gliot (Gliot),[1] could not locate Umedman on the premises for a period of several hours. Gliot was told by other employees that Umedman was at the Somerton Deli (Deli) across the street. Gliot found Umedman at the Deli, and asked her what she was doing there when she was supposed to be working. Umedman explained that she had received a call from the Deli owner who asked her to bring her Certificate to him, because the health inspector was at the premises, and the Deli's license was expired. Umedman did not immediately return to Employer's premises. Employer initiated formal action against Umedman as a result of her conduct on February 23, 2011. No harm came to Employer as a result of Umed-

---

1. Gliot owns 50% of Employer's stock. Olga Finkelberg owns the remaining 25% of Employer's stock.

man's actions on February 23, 2011. Following an investigation, corporate meetings and votes, Umedman was discharged on May 4, 2011, due to gross misconduct consisting of inappropriate and unethical actions.

■ Umedman filed for UC benefits. The Philadelphia UC Service Center denied Umedman benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[2] She appealed, and a hearing was scheduled. On July 20, 2011, Umedman's counsel requested subpoenas for Gliot and Olga Finkelberg (Finkelberg) to attend the hearing. The request was denied. Following a hearing, at which Umedman and Gliot testified, the Referee reversed the UC Service Center's determination and granted Umedman UC benefits. Employer appealed to the UCBR. By decision and order issued January 20, 2012, the UCBR reversed the Referee's order, thereby denying Umedman benefits pursuant to Section 402(e) of the Law. Umedman appealed to this Court.[3]

■ Umedman first argues that the UCBR's finding of willful misconduct was not supported by substantial evidence. We disagree. Under Section 402(e) of the Law, an employee is not eligible for benefits if "his unemployment is due to his discharge ... for willful misconduct connected with his work...."

Willful misconduct has been defined as (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard

of standards of behavior which an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Elser v. Unemployment Comp. Bd. of Review*, 967 A.2d 1064, 1069 n. 7 (Pa.Cmwlth. 2009). "Whether a claimant's conduct constituted willful misconduct is a question of law subject to this Court's review. Further, the employer bears the burden of establishing that the claimant was discharged for willful misconduct on the job." *Roberts v. Unemployment Comp. Bd. of Review*, 977 A.2d 12, 16 (Pa.Cmwlth.2009) (citation omitted). "Once the employer meets its burden, a claimant may then prove he had good cause for his actions. Good cause is established where the action of the employee is justifiable or reasonable under the circumstances...." *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015 (Pa.Cmwlth. 2008) (citation and quotation marks omitted).

At the hearing, Gliot testified that although she was not sure whether Employer had a policy about usage of the Certificate, Umedman's actions on February 23, 2011 harmed Employer. Specifically, Gliot stated that removal of the Certificate that is non-transferable and must be publically displayed, placed Employer's certification at risk. In addition, Employer's impeccable reputation would be harmed by having

---

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

3. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment*

*Comp. Bd. of Review*, 906 A.2d 657 (Pa. Cmwlth.2006).

On March 23, 2012, Employer intervened on appeal. Umedman filed her reproduced record, which included extra-record evidence. The UCBR filed a motion to strike the extra-record evidence, which was granted by this Court on July 10, 2012.

its Certificate tied to an inspection of a premises found in poor condition, and by deceiving a health inspector who also inspects Employer's premises. Finally, if the incident became known to the City, its License would be revoked, and it would have to close down.

Umedman testified that the Certificate represents merely that she was trained in food safety preparation and could teach and oversee others in the process. She stated that it is not specific to any premises, so she could take it and use it at any premises. She further testified that, during her food safety training, she learned that a restaurant could use a certificate from any other restaurant in order to pass inspection. Umedman maintained that she was merely helping the Deli by using her Certificate for its inspection. Umedman confirmed that she did not work for the Deli, which the health inspector knew because he recognized her from inspections of Employer's premises, and thanked her for her effort to save the Deli. Umedman acknowledged that she did not know the Deli's food safety status when she presented her Certificate. She testified that she did not make any misrepresentations to the inspector. She stated that the February 23, 2011 incident was "just a reason to get rid of me ... [Gliot and Finkelberg] wanted my money." [4] N.T. at 42.

Based upon this evidence, the UCBR found that Employer established its obligation to display the Certificate and the License on its premises in order for it to legally prepare and serve food to its clients. The plain language on the face of the Certificate and the License clearly reflect that they may be cancelled for any violation of the City's ordinances or regulations. In particular, the Certificate can be revoked for failure to comply with Title 6, Section 6–301 of the Philadelphia Code. The UCBR did not find Umedman's testimony credible that she did not represent herself to the health inspector as a Deli employee. It also rejected her argument that she could use her Certificate at other food establishments, as the Certificate expressly reflects that it is non-transferable. The UCBR concluded that Umedman's actions on February 23, 2011 jeopardized Employer's licensing and its ability to legally prepare and serve food to its clients, which was a departure from standards of behavior an employer can rightfully expect from an employee. Employer's burden was met with the undisputed documentation alone.

■ Claimant asks this Court to reassess the credibility of the witnesses and to resolve those conflicts. "In unemployment compensation proceedings, the [UCBR] is the ultimate fact finder, and it is empowered to resolve all conflicts in the evidence and to determine the credibility of witnesses." *Procito v. Unemployment Comp. Bd. of Review,* 945 A.2d 261, 262 n. 1 (Pa.Cmwlth.2008). Here, the UCBR deemed Employer's witnesses credible and resolved conflicts in the testimony in Employer's favor.

■ Moreover, "[a]n employer need not have an established rule where the behavioral standard is obvious and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result." *Biggs v. Unemployment Comp. Bd. of Review,* 66 Pa. Cmwlth. 117, 443 A.2d 1204, 1206 n. 3 (1982). This Court has held that "[a] finding of willful misconduct does not hinge on an employee's intent to wrong

4. Umedman, individually and on behalf of Employer, filed an action in the Philadelphia Court of Common Pleas at 2924 of 2011, against Gliot and Finkelberg for wrongful termination and oppression as a minority owner.

his employer; such a finding may be based on an employee's conscious indifference to the duty owed his employer." *Grigsby v. Unemployment Comp. Bd. of Review*, 67 Pa.Cmwlth. 482, 447 A.2d 705, 707 (1982).

Section 6–301(10)(b) of the Philadelphia Code states a Certificate is nontransferable. Section 6–301(10)(c) of the Philadelphia Code authorizes revocation of a Certificate upon finding noncompliance with regulations. Section 6–301(8) of the Philadelphia Code requires that food establishments shall:

(a) During hours when food is being prepared, manufactured, cooked, processed, dressed, served or distributed, have present and in its employ at least one (1) person with a valid Food Establishment Personnel Food Safety Certificate, issued pursuant to Section 6–301(10).

(.1) The establishment shall post in a conspicuous location the Certificates of all such persons. No expired or revoked Certificates shall be posted.

. . . .

(b) Conduct a minimum of one (1) self-inspection of the food establishment every three (3) months.

(.1) The self-inspection shall be conducted by a person with a valid Food Establishment Personnel Food Safety Certificate. The self-inspection shall include a thorough and complete examination and evaluation of:

(i) the physical premises, both interior and exterior;

(ii) all food that is processed, manufactured, transported, or served on the premises; and

(iii) the manner in which such food is handled and stored.

. . . .

Original Record, Item 19 at 3–4.

■ It is clear from this provision that when food is being prepared in any establishment, that establishment must present an employee[5] with a valid Certificate, which must be displayed, and that the certified employee must conduct regular self-inspections of the employer's premises. Because Umedman was trained and then issued a Certificate which clearly stated thereon that it was revocable for failure to comply with Section 6–301 of the Philadelphia Code, it is reasonable to conclude that she should have been aware of these provisions. Umedman nevertheless removed the Certificate from Employer's premises on February 23, 2011, and produced it to the health inspector on behalf of the Deli for the purpose of keeping the Deli from being closed because it did not have a valid certificate holder present and in its employ. She did this without any knowledge of how food is processed, prepared or served by the Deli, which is also in direct contravention of the Philadelphia Code. By her actions, Umedman placed Employer's License and its operation in jeopardy, which represents a disregard of standards of behavior which Employer could rightfully expect from her.

■ "Findings made by the [UCBR] are conclusive and binding on appeal if the record, examined as a whole, contains sub-

---

**5.** Umedman also argues that "employee" is defined in Section 46.3 of the City's Regulations Governing Food Establishments (Regulations) to include "volunteers," which was her role for the Deli on February 23, 2011. However, this is not persuasive. First, the Philadelphia Code does not define "employ-

ee," and there is no indication that the Regulations govern terms used in the Philadelphia Code. Second, if, in fact, Umedman did not expressly represent to the health inspector that she had any relationship to the Deli, whether she was an employee or volunteer is immaterial.

stantial evidence to support the findings." *Owoc v. Unemployment Comp. Bd. of Review*, 809 A.2d 441, 443 (Pa.Cmwlth.2002). "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion." *Wheelock Hatchery, Inc. v. Unemployment Comp. Bd. of Review*, 167 Pa.Cmwlth. 343, 648 A.2d 103, 105 n. 3 (1994). Clearly, there was substantial evidence to support the UCBR's finding that Employer met its burden and Umedman did not. Thus, the UCBR did not err by finding that Umedman was discharged for willful misconduct.

Umedman next argues that the UCBR erred by failing to consider the City Health Department's unwritten "closure prevention policy." We disagree. On July 10, 2012, this Court granted the UCBR's motion to strike extra-record evidence. At the hearing, Umedman presented only hearsay testimony about her trainer's instructions and the inspector's gratitude in support of her position that she properly used her Certificate for the Deli. She made no reference at the hearing to a closure prevention policy.

■ The UCBR cannot review evidence that was not submitted to the Referee, unless it directs the taking of additional evidence. 34 Pa.Code § 101.106; *see also Lock Haven Univ. of Pa. of State Sys. of Higher Educ. v. Unemployment Comp. Bd. of Review*, 126 Pa.Cmwlth. 400, 559 A.2d 1015 (1989); *Perrelli v. Unemployment Comp. Bd. of Review*, 57 Pa.Cmwlth. 605, 426 A.2d 1272 (1981). Moreover, "[t]his Court may not consider any evidence that is not part of the certified record on appeal." *Pennsylvania Turnpike Comm'n v. Unemployment Comp. Bd.*

*of Review*, 991 A.2d 971, 974 (Pa.Cmwlth. 2009). This Court has held that although it authorizes this Court to correct omissions, Pa.R.A.P. 1951(b)[6] is not an appropriate basis on which this Court may permit the record to be supplemented with material never introduced before the administrative agency. *Anam v. Workmen's Comp. Appeal Bd. (Hahnemann)*, 113 Pa. Cmwlth. 483, 537 A.2d 932 (1988).

> [T]he Court expects that the record will be developed at the administrative hearing, not at the appellate level.... It should be well established by now that neither the [agency] in its decision making process, nor this Court in a review of that process, may consider any matters not made a part of the record when counsel and the litigants are present. Whether or not such matters would be prejudicial to the Petitioner is irrelevant. They simply cannot be considered.

*Grubbs v. Pennsylvania Bd. of Prob. & Parole*, 85 Pa.Cmwlth. 464, 481 A.2d 1390, 1391 (1984). Pursuant to this Court's July 10, 2012 order and case law, we must disregard evidence related to the closure prevention policy.

■ Umedman next argues that the two-month delay between the incident on February 23, 2011 and her discharge on May 4, 2011 bars a holding of willful misconduct. We disagree. In *Tundel v. Unemployment Compensation Board of Review*, 44 Pa.Cmwlth. 312, 404 A.2d 434 (1979), this Court stated, "[a]n incident of willful misconduct cannot be temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Id.*, 404 A.2d at 436. However, more recently, in *Raimondi v. Unemployment*

---

6. Pa.R.A.P. 1951(b) specifically states:
   If anything material to any party is omitted from the record or is misstated therein, the parties may at any time supply the omission or correct the misstatement by stipulation, or the court may at any time direct that the omission or misstatement be corrected and, if necessary, that a supplemental record be prepared and filed.

*Compensation Board of Review,* 863 A.2d 1242 (Pa.Cmwlth.2004), this Court stated:

> [W]here there is an *unexplained* substantial delay between the claimant's misconduct and the employer's act to terminate the claimant, the remoteness doctrine will preclude an employer from seeking a denial of benefits based on allegations of willful misconduct. However, where the record establishes an explanation for the delay, such as the lengthy nature of the employer's administrative review process, and there is no action on the part of the employer indicating that it condoned the claimant's conduct, the remoteness doctrine does not apply to preclude a denial of benefits.

*Id.,* 863 A.2d at 1247. Here, the record evidence established that between the time of the February 23, 2011 incident and the date Umedman's employment was terminated, Umedman was on vacation for a week, and Gliot and Finkelberg were investigating and undertaking the steps necessary to remove a 25% owner, which included conducting corporate meetings and votes. Based upon this proof and the fact that there was no evidence that Employer condoned Umedman's conduct, we cannot conclude that the delay between the incident and termination of Umedman's employment was substantial, unexplained or unreasonable. Accordingly, we reject Claimant's assertion that a delay bars a holding of willful misconduct.

■ Lastly, Umedman argues that the UCBR erred and violated her constitutional rights by failing to remand this case to the Referee for additional fact-finding, in light of the Referee's improper denial of Umedman's subpoena request. This issue was raised for the first time in Umedman's petition for review. Section 101.107(b) of the UCBR's Regulations, 34 Pa.Code § 101.107(b) specifically states that, with the exception of circumstances not applicable here, "[t]he [UCBR] shall consider the issues expressly ruled upon in the decision from which the appeal was filed." Pa. R.A.P. 1551(a) also states in pertinent part: "Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit...." Because Umedman failed to raise this issue at the hearing before the Referee and it was not considered by the UCBR, it is waived and cannot now be decided by this Court.

Accordingly, the UCBR's decision is affirmed.

### ORDER

AND NOW, this 13th day of September, 2012, the Unemployment Compensation Board of Review's January 20, 2012 order is affirmed.