Charlene G. Smith,            :
           Petitioner       :
                               :
      v.                  :
                               :
Unemployment Compensation  :
Board of Review,           :   No. 2339 C.D. 2013
          Respondent   :   Submitted: August 8, 2014

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED: August 29, 2014

          Charlene G. Smith (Claimant), pro se, petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) October 23, 2013 order affirming the Referee's decision determining Claimant ineligible for Unemployment Compensation (UC) benefits under Section 402(e) of the UC Law (Law)[1] due to willful misconduct. The sole issue for this Court's review is whether the UCBR erred by concluding that Claimant engaged in willful misconduct for violating Employer's work rule without good cause. Upon review, we affirm.

          Claimant was employed full-time in Berks Cardiologists Ltd.'s (Employer) medical records department from March 16, 2010 until her discharge on May 29, 2013. Thereafter, Claimant filed for UC benefits. On June 10, 2013, the Allentown UC Service Center (UC Service Center) issued a Notice of Determination

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

(Determination) finding Claimant ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed, and a Referee hearing was held on July 29, 2013.[2] On August 7, 2013, the Referee affirmed the UC Service Center's Determination. Claimant appealed to the UCBR. On October 23, 2013, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[3]

Claimant argues that the UCBR erred by concluding that Claimant engaged in willful misconduct for violating Employer's work rule without good cause. We disagree. Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). Although not defined in the Law, our courts have described "willful misconduct" as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). "When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation." *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012).

> Once the employer has established the rule and its violation, the burden shifts to the claimant to demonstrate either that the rule is unreasonable or that good cause existed to violate the rule. Whether a claimant has good cause to violate an

---

[2] Claimant was represented by counsel at the Referee hearing.

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

2

employer's rule or policy is a question of law subject to this court's review and should be viewed in light of all of the attendant circumstances.

*Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208 (Pa. Cmwlth. 2006) (citation omitted).

In this case, Employer's Chief Operating Officer Valerie DeVine (DeVine) testified at the Referee hearing that Employer has a policy that requires employees unable to report to work to contact DeVine or another supervisor "at least an hour" before the start of their shift. Notes of Testimony, July 29, 2013 (N.T.) at 15; *see also* N.T. Ex. 9. The "Employee Conduct" section of Employer's Personnel Policies provides in pertinent part:

> Employees are expected to meet acceptable standards of conduct and performance[.]
>
>  . . . .
>
> Employees who engage in any misconduct or whose performance is unsatisfactory may be subject to disciplinary action, up to and possibly including immediate termination as explained in the Disciplinary Policy.
>
> . . . .
>
> Expected behavior includes . . . . [n]otifying the supervisor or designated staff member when the employee will be absent from work, or is unable to report to work on time[.]

N.T. Ex. 10; *see also* N.T. at 18. Employer's Personnel Policies also reflect:

> The following conduct is prohibited, and may be subject to disciplinary action, including termination:
>
>  . . . .
>
> • Failure to comply with established personnel policies, procedures and practices;
>
>  . . . .

3

- Abuse of sick leave, unexcused absence, excessive absenteeism;

. . . .

- Failure to follow Department and/or Practice procedures for requesting time off, reporting an unscheduled absence, and/or reporting for work . . . .;

. . . .

- Absenteeism[.]

N.T. Exs. 10a-10b.

DeVine reported that Claimant had an extensive history of unscheduled work absences which resulted in Claimant being directed to report her absences directly to DeVine. The record reveals that between April and November 2010, Claimant had 49.5 hours of unscheduled absences. N.T. Ex. 33. Between January and September 2011, Claimant had 58.0 hours of unscheduled absences. N.T. Exs. 25, 31. Claimant was verbally counseled on June 14, 2011 regarding her absences. N.T. Ex. 30. On October 4, 2011, Claimant was given a notice of disciplinary action based upon her excessive unscheduled absences, and was required to report her absences directly to DeVine. N.T. at 16-17; N.T. Ex. 24. Claimant signed the October 4, 2011 disciplinary action. N.T. at 17; N.T. Ex. 24. On November 28, 2011, the requirement that Claimant was to call DeVine directly about absences was reviewed. N.T. at 16-17; N.T. Ex. 24. According to DeVine, Claimant also signed the November 28, 2011 disciplinary action notation. N.T. at 17.

Between February and August 2012, Claimant had 51.5 hours of unscheduled absences. N.T. Ex. 22. Claimant's April 23, 2012 annual review reflected concerns regarding her absenteeism and compliance with Employer's reporting procedures. N.T. Exs. 15a-d. Employer again warned Claimant and then placed Claimant on probation on May 8, 2012 for unscheduled absences/reporting.

4

N.T. at 17; N.T. Ex. 15d. On September 4, 2012, Employer conducted a probation follow-up, during which Claimant was reminded to call DeVine regarding her absences, and was told that her attendance issues could lead to further discipline, including discharge. N.T. at 16-17; N.T. Exs. 15d, 21. Between February and April 2013, Claimant had 49.5 hours of unscheduled absences. N.T. Ex. 16.

DeVine stated that Claimant did not call her or show up for work on May 29, 2013. She recounted that at approximately 8:00 a.m. on May 30 2013, Claimant arrived at her office, admitted that she never contacted Employer about her May 29, 2013 absence and "said something about taking a medication and not waking up." N.T. at 19; *see also* N.T. at 20. Claimant told her that the medication caused her to sleep the entire day on May 29, 2013. Although Claimant usually reported that her absences were due to medical reasons, DeVine testified that she did not have any documentation from Claimant or medical personnel requiring Claimant to take health-sustaining medication, or that Claimant required accommodations for such medications.

Claimant acknowledged at the Referee hearing that Employer's policy required that if she had an unscheduled absence, she was to call DeVine an hour before the start of her shift. She admitted that she missed work in the past due to medical reasons, but claimed that she provided Employer with doctors' notes. Claimant recalled that Employer had warned her about her unscheduled absences in the past, but could not "seem to remember" whether she was ever told that additional unscheduled absences may lead to her discharge. N.T. at 29.

Claimant explained that between January and May 2013, she was undergoing treatment for medical issues including degenerative disc disease, spinal stenosis and a bulging cervical disc, and severe arthritis in her entire spine. Claimant had been prescribed the muscle relaxer Flexeril to be taken three times daily as needed for muscle spasms. She was also prescribed the anti-inflammatory Ibuprofen

5

800 and took Benadryl as needed for hives. The Flexeril and Ibuprofen 800 were prescribed by different doctors. She read from the prescriptions that both Flexeril and Ibuprofen 800 may cause drowsiness or dizziness. She stated that Benadryl caused her to get sleepy.

Claimant reported that she stopped taking the full dosages of her medications for a time while she attended classes at night. She stated that she could not take the full daily doses because she had to be up late to do homework, and she could not take them during the day because they made her tired at work. She testified that since she was out of school for the summer, she decided she would start taking her full dosages of Flexeril and Ibuprofen 800 again at night. Accordingly, after work on May 28, 2013, at approximately 5:00 p.m., she took full doses of both medications. Claimant described that because the Flexeril is to be taken three times daily, in order to take her full dosage, she took three pills over the course of that evening - at 5:00 p.m., 7:00 p.m. and 9:00 p.m.

Claimant was scheduled to work on May 29, 2013 from 8:00 a.m. to 4:30 p.m. She recalled that she set her alarm for 6:00 a.m. and went to bed around 10:00 p.m. She asserted that she awoke at 11:00 p.m. with hives, so she took two Benadryl and went back to bed. Claimant described that she had previously taken Benadryl only once, and not in combination with her other medications. Claimant contended that she did not wake up on May 29, 2013 until 5:30 p.m. She claimed that her daughter heard her alarm and attempted to wake her, but Claimant did not respond. Claimant recounted that she was upset when she realized that she had missed work; however, she did not attempt to call the office. Rather, Claimant decided that since her shift was over and she was upset, she would go into the office the next morning and explain the situation to DeVine, which she did. DeVine terminated Claimant's employment.

6

Based upon the evidence presented, the Referee found that Employer had a policy for reporting unscheduled absences which Claimant was aware and had been repeatedly warned. He also determined that Employer specifically warned Claimant that additional violations of the policy would result in further discipline, including discharge. The Referee also found that Claimant failed to report to work or notify Employer on May 29, 2013, and Employer discharged Claimant for failure to report to work and failure to report her absence. The Referee denied Claimant UC benefits on the following basis:

> The Referee does not find . . . that . . . [C]laimant has shown good cause for failing to notify [Employer] of her absence because the Referee does not find [Claimant's] testimony to be credible that she was unable to notify [Employer]. The Referee finds that [Claimant] has shown that she took medication the night before that caused her to be drowsy, but has not shown that she was unable to contact [Employer] at some time prior to or on May 29, 2013 to report her absence. The Referee finds that [Claimant] engaged in willful misconduct . . . .

Referee Dec. at 2.

> The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding

whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Here, the UCBR affirmed the Referee's decision,[4] stating:

Because [Claimant] had been warned about her attendance, she had an obligation to safeguard her employment with additional precautions. [Claimant's] allegation that sleeping through her shift on May 29, 2013 and her failure to notify [Employer] was inadvertent and unintended is not found to be credible. Therefore, the [UCBR] adopts and incorporates the Referee's findings and conclusions . . . .

UCBR Dec. at 1. Viewing the evidence in a light most favorable to Employer as we must, we hold that there was substantial record evidence to support the UCBR's conclusion that Employer met its burden of proving that it had a work rule, that Claimant violated it despite prior warnings, and that Claimant failed to prove good cause for doing so. Accordingly, the UCBR did not err by concluding that Claimant engaged in willful misconduct for violating Employer's work rule without good cause.

Based upon the foregoing, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[4] With her pro se appeal to the UCBR, Claimant supplied a letter and a significant amount of documentation about her medical conditions and her medications. The UCBR stated: "As a matter of law, the [UCBR] is prohibited from considering the extra-record testimony on appeal and refrained from doing so[] in this case." UCBR Dec. at 1. *See* 34 Pa. Code § 101.106; *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558 (Pa. Cmwlth. 2012).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlene G. Smith,      :
      Petitioner  :
            :
   v.        :
            :
Unemployment Compensation  :
Board of Review,      :  No. 2339 C.D. 2013
      Respondent :

## O R D E R

AND NOW, this 29th day of August, 2014, the Unemployment Compensation Board of Review's October 23, 2013 order is affirmed.

           _____
           ANNE E. COVEY, Judge