# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Home Care Helpers, LLC,      :
         Petitioner      :
                   :
         v.              :     No. 1052 C.D. 2016
                   :     Submitted: December 23, 2016
Unemployment Compensation Board      :
of Review,      :
         Respondent      :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: March 20, 2017**

Home Care Helpers, LLC (Employer), petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) concluding that Elena L. Rejametova (Claimant) is not ineligible for UC benefits under Sections 402(b)[1] or 402(e)[2] of the UC Law (Law). On appeal, Employer argues that the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). Section 402(b) provides, in relevant part: "An employe shall be ineligible for compensation for any week— . . . (b) In which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act . . . ." Id.

[2] 43 P.S. § 802(e). Section 402(e) provides: "An employe shall be ineligible for compensation for any week— . . . (e) In which h[er] unemployment is due to h[er] discharge or

*(Continued…)*

Board erred in concluding that Claimant's separation from her employment was involuntary and, in the alternative, that Claimant's separation was not due to Claimant's willful misconduct. Finding no error, we affirm.

## I.    BACKGROUND

Claimant was employed as a full-time home health aide with Employer "from May 1, 2014 through approximately December 28, 2015." (Referee Decision, Findings of Fact (FOF) ¶ 1.) Claimant's work was to provide home care assistance to her mother (Mother). (Id. ¶ 2.) Employer did not allow Claimant to continue providing these services to Mother after December 28, 2015. (Id. ¶ 3.) There is a dispute between the parties over the terms of Claimant's subsequent separation from her employment.

Claimant applied for UC benefits in January of 2016 and submitted a completed Claimant Questionnaire alleging that she was discharged by Employer on the basis of discrimination. (R.R. at 1a-4a.) A UC Service Center found that because Claimant voluntarily quit her employment without a necessitous and compelling cause, she is ineligible for benefits under Section 402(b) of the Law. (Id. at 6a.) Claimant appealed and the matter was assigned to a UC Referee for a hearing and disposition.

Hearings were held on March 24, 2016 and April 8, 2016, at which Claimant and Employer's Office Manager (Office Manager) testified.[3] Neither party was

_____

temporary suspension from work for willful misconduct connected with h[er] work, irrespective of whether or not such work is "employment" as defined in this act." Id.

[3] In addition to Office Manager, one of the two owners of Employer attended the March 24, 2106 hearing and intended to testify. (R.R. at 39a.) However, the March 24, 2016 hearing ran over time and was continued to April 8, 2016. (Id. at 56a, 76a.) Only Office Manager attended the April 8, 2016 hearing on behalf of Employer as the owner was sick that day. (Id. at

*(Continued…)*

2

represented by counsel at the hearings. The Referee began the March 24, 2016 hearing by asking whether Claimant voluntarily quit her employment or whether she was terminated. (R.R. at 43a.) Office Manager testified that Claimant voluntarily left her employment, and Claimant testified that she was terminated. (Id.)

Office Manager testified as follows. Claimant began her employment on May 1, 2014, and Claimant's last day was either December 27 or December 28, 2015. (Id. at 44a.) Claimant worked full-time as a home health aide to Mother. (Id. at 45a.) Claimant was informed at the time she commenced her employment that she could not serve as Mother's representative at the same time she served as Mother's home health aide. (Id.) Claimant was informed about this rule on the phone and in person by a caseworker with the Allegheny County Area Agency on Aging (County Agency). (Id. at 45a-46a.) However, Office Manager was not present at any time when Claimant was informed of this rule. (Id. at 46a.) Employer's files had another individual listed as Mother's representative up to January 22, 2015. (Id. at 49a.) Mother's case worker informed Employer via email on October 22, 2015, that the previous representative was no longer listed as Mother's representative, and the matter was raised with Claimant by a representative of the County Agency and one of the two owners of Employer at Claimant's house. (Id. at 49a-50a; Employer's Ex. 1, R.R. 58a.) In December of 2015, the other owner of Employer told Claimant that there were opportunities to work with other clients for which she was not a representative. (Id. at 46a.) Office

---

76a.) Similarly, Claimant brought a witness to the March 24, 2016 hearing that did not have an opportunity to testify. (Id. at 38a.) This witness also did not attend the April 8, 2016 hearing. (Id. at 76a.)

3

Manager was present when Claimant was told of other opportunities, but because the conversation between Claimant and the owner was conducted in Russian, Office Manager could not understand what was said. (Id.) Mother's home health care services were then re-assigned to two other employees. (Id. at 53a.)

Office Manager testified at the March 24, 2016 hearing that there was another issue that led to Claimant's separation. (Id. at 47a.) Office Manager stated that she was not able to testify to the facts underlying that issue because an investigation on the matter was not completed by Protective Services. (Id.) The Referee asked Office Manager at the start of the April 8, 2016 hearing if she was prepared to offer testimony on that issue and Office Manager declined. (Id. at 77a.)

Claimant, through an interpreter, testified as follows. Claimant worked for Employer caring for Mother. (Id. at 78a.) Claimant never resigned from Employer and remains able and ready to work. (Id.) One of the owners of Employer told her that she was fired when the owner came to Claimant's house intoxicated and behaving inappropriately.[4] (Id.) The owner attacked another caregiver by scratching and punching him in the stomach.[5] (Id.) The owner told Claimant that Mother had to go to a nursing home and that Claimant was fired. (Id.) The owner later called Claimant and told her that she was fired and that the other caregiver would be next. (Id.) The owner told Claimant that she should not even think about applying for UC benefits because the owner and the County Agency are "related to

---

[4] It is not clear from the transcript when these events transpired. The transcript reads: "Until then, you know from [inaudible] 20th, [owner] told me that I was fired. (R.R. at 78a (first alteration in original).) Based on Office Manager's testimony, it appears that the missing word is "December," however this fact remains unknown.

[5] The other caregiver was prepared to testify at the March 24, 2016 hearing, but did not attend the April 8, 2016 hearing when Claimant testified to these facts.

4

the government and you have no chance of getting Unemployment." (Id.) A representative from the County Agency emailed Claimant and told her that unless Claimant and Mother found a new home care agency, Mother's assistance would be discontinued. (Id.) The same representative later called Claimant and told her that they are taking away all of Claimant's work hours. (Id.) Claimant told the representative that she could give her the name of another person to serve as Mother's representative. (Id. at 80a.) The representative told Claimant that such was not possible. (Id.) Claimant later attempted to name a new representative through an email to the representative, which went unanswered. (Id.) Claimant thinks that she was discriminated against because she is Russian. (Id. at 78a.) Claimant went into Employer's office asking for documentation on the reason for her termination, and Employer refused her request. (Id. at 78a-79a.)

Office Manager questioned Claimant at the April 8, 2016 hearing and asked Claimant whether she understood that there was alternative work available. (Id. at 81a.) Claimant responded by stating: "I understand but nobody offered me any other work. They just wanted to get rid of me." (Id.) The Referee asked Claimant whether she would be available to accept employment for other individuals, to which Claimant responded "yes." (Id. at 82a.) The Referee asked Office Manager whether she personally contacted Claimant to offer her additional employment. (Id. at 83a.) Office Manager said that she had not. (Id.) According to Office Manager, one of Employer's owners offered Claimant alternative work in Russian when Claimant came into the office. (Id.) While Office Manager could not understand Russian, the owner told Office Manager what was said after Claimant left the office. (Id.) Office Manager testified that the owner could not attend the hearing because she had to be in the office while Office Manager was away. (Id.)

5

When asked by the Referee why the owner did not come in the place of Office Manager, Office Manager testified: "I'm just doing what I'm told – I am not sure." (Id. at 84a.)

The Referee considered the evidence and issued a Decision and Order on April 14, 2016. The Referee found that Claimant did not quit her employment and that Employer did not offer Claimant work with any other individuals. (FOF ¶¶ 3-4.) The Referee concluded that Office Manager's testimony was hearsay and reasoned as follows.

> Here, there is no competent evidence of record to corroborate [E]mployer's hearsay testimony. [C]laimant denies being a representative for her mother and further denies being offered other job assignments. [C]laimant denies quitting [her] employment and argues that she was fired. The evidence of record leads to the conclusion that [C]laimant's separation from employment was involuntary and Section 402(b) of the Law does not apply. There is no competent evidence of record to meet [E]mployer's burden of proving willful misconduct and [C]laimant's request for UC benefits cannot be denied in accordance with Section 402(e) of the Law.

(Referee Decision at 2.) The Referee concluded that because Claimant's separation was involuntary, she could not be found ineligible for benefits under Section 402(b) of the Law, and that Employer did meet its burden to prove willful misconduct under Section 402(e) of the Law. (Id.) Employer appealed to the Board, which affirmed and adopted and incorporated the Referee's findings and conclusions. (Board Order.) This appeal followed.[6]

---

[6] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

6

## II. EMPLOYER'S APPEAL

On appeal, Employer argues that Claimant voluntarily terminated her employment without a necessitous and compelling cause. Employer further argues that Claimant is guilty of willful misconduct by "engag[ing] in neglectful behavior toward her client." (Employer's Br. at 17.) This neglect, according to Employer, "resulted in a confidential investigation by the Allegheny County Area Agency on Aging and Protective Services" and the removal of Mother from Claimant's home. (Id.)

The central issue in this case is whether Claimant's separation from her employment was voluntary or involuntary. While our review of this question is highly fact intensive, "[w]hether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment." Watkins v. Unemployment Comp. Bd. of Review, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013). To that end, "[a] finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave h[er] employment." Id.

The Board considered conflicting testimony on the terms of Claimant's separation from her employment and concluded that Claimant's separation was not voluntary. (FOF ¶ 4.) Employer did not permit Claimant to continue working as Mother's home health aide and did not offer Claimant employment with other individuals. (Id. ¶ 3.) Based on these findings, we see no error of law because there is no indication from the facts found by the Board that Claimant intended to leave her employment.

Office Manager's testimony on the terms of Claimant's separation is little more than uncorroborated hearsay.[7]  Employer argues in its Reply Brief that documents attached to its Brief allegedly corroborating Office Manager's testimony should be considered because the record made at the administrative level was incomplete.  Employer cites to this Court's case law addressing local agency appeals stating that "where a record before a local agency is incomplete the trial court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purposes of making a full and complete record."  (Reply Br. at 12 (citing Cain v. Allegheny Cnty. Housing Auth., 986 A.2d 947, 957 n.7 (Pa Cmwlth. 2009)).)  Employer further argues that remand is appropriate in the UC context where the Board fails to make adequate findings of fact sufficient for this Court to perform its appellate review.  (Id. (citing Falciglia v. Unemployment Comp. Bd. of Review, 422 A.2d 1204, 1207 (Pa. Cmwlth. 1980)).)

To the extent that Employer argues that the record before the Referee and Board was incomplete because it contains no evidence corroborating Office Manager's testimony, we believe it was up to Employer to introduce such evidence

---

[7] Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Rule 801(c) of the Pennsylvania Rules of Evidence, Pa. R.E. 801(c).  "Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand."  Walker v. Unemployment Comp. Bd. of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976).  While Employer argues in its reply brief that Office Manager's testimony is not hearsay, Employer did not raise this issue to the Board or in the Petition for Review to this Court.  This issue is, therefore, waived for appellate review.  Lausch v. Unemployment Comp. Bd. of Review, 679 A.2d 1385, 1391 (Pa. Cmwlth. 1996).  Even if the issue was not waived, we would conclude that Office Manager's testimony on the terms of Claimant's separation is uncorroborated hearsay as Office Manager's testimony relies exclusively on out of court statements made to her by the owners of Employer.

at the hearing. There has been no argument that Employer was precluded from doing so. Given the evidence presented, the Board's findings of facts sufficiently allow this Court to conduct appellate review. We expect that the record will be developed by the Referee. Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558, 564 (Pa. Cmwlth. 2012). We cannot consider any evidence not made part of the certified record on appeal. Id. Accordingly, we will not consider the documents attached to Employer's brief.

Employer also argues that Office Manager's testimony is corroborated by a single sentence of Claimant's Petition for Appeal from the Notice of Determination and evidence attached to its brief that was not submitted to the Referee. The sentence in Claimant's Petition for Appeal pointed to by Employer relates to Claimant's allegation of discrimination and Mother's wish to change the manner in which her services were provided. (Petition for Appeal ¶ 6, R.R. at 17a.) The allegation reads:

> My mom wanted to change this agency to self-services to do it My Way[8] and stay home so it will take care of all problems without discrimination [of] her rights. [The representative of the County Agency] is not willing to help with My Way, based on the hate and discrimination [of] Russians with disabilities. She said that My Way is not for you!

(Id.) This sentence, reflecting Mother's desire to change the terms of her care and Claimant's exploration of alternative approaches to Mother's care, does not go to

---

[8] "My Way" appears to refer to the "Services My Way" model of long-term care assistance administered by the Department of Human Services. Claimant testified that she tried to "enroll in the service called Service My Way" and was told by the representative of County Agency that she could not because she was "already fired." (R.R. at 79a-80a.) Information on the "Services My Way" program can be found online at: www.dhs.pa.gov/citizens/longtermcareservices (last visited Feb. 21, 2017).

9

the terms of Claimant's separation and, therefore, does not corroborate Office Manager's hearsay testimony.

The evidence of record, specifically Claimant's testimony that she did not quit but was fired and that Employer did not give her any other clients, represents substantial evidence in support of the Board's findings. By arguing that the facts of record do not support a finding that Claimant's termination was not voluntary, Employer essentially asks this Court to reweigh the evidence, which we cannot do.

> [I]t is well settled that the Board is the ultimate finder of fact in unemployment compensation proceedings. Thus, issues of credibility are for the Board which may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record. Findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings. This Court must examine the evidence in the light most favorable to the party who prevailed before the Board, and to give that party the benefit of all inferences that can be logically and reasonably drawn from the testimony.

Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011) (citations omitted). As such, we will not disturb the findings, which support the Board's conclusion that Claimant did not voluntarily leave her employment.

Employer's willful misconduct argument presumes that Claimant was involuntarily discharged and relies exclusively on bare allegations of neglect and evidence not presented to the Referee or Board. Office Manager was provided two opportunities to present evidence on Claimant's alleged neglectful conduct to the Referee and declined. (R.R. at 47a, 77a.) The only evidence relied upon by Employer in support of this claim of willful misconduct is a document detailing its work rules attached to Employer's brief to this Court. As stated above, we cannot consider the documents attached to Employer's brief that were not presented to the

10

Board.  Umedman, 52 A.3d at 564.  As the employer bears the burden to prove willful misconduct, Chapman, 20 A.3d at 606, and Employer presented no competent evidence showing that Claimant was terminated for willful misconduct, we must conclude that the Board did not err in concluding that Employer has not met its burden.

For the foregoing reasons, the Order of the Board is affirmed.


_____
**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Home Care Helpers, LLC, : 
                   Petitioner : 
                                     : 
            v. :   No. 1052 C.D. 2016
                                       : 
Unemployment Compensation Board : 
of Review, : 
                   Respondent : 

## O R D E R

**NOW**, March 20, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge