# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tiffany J. Cunningham,        :
                Petitioner     :
                               :
           v.                      :
                               :
Unemployment Compensation     :
Board of Review,            :     No. 1090 C.D. 2019
               Respondent    :     Submitted: December 13, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: February 4, 2020

Tiffany J. Cunningham (Claimant) petitions this Court pro se for review of the Unemployment Compensation (UC) Board of Review's (UCBR) July 25, 2019 order affirming the Referee's decision denying Claimant UC benefits under Section 402(b) of the UC Law (Law).[1] Claimant presents three issues for this Court's review: (1) whether Claimant voluntarily quit her employment; (2) whether the Referee properly excluded Claimant's hearsay evidence; and (3) whether Lifestyle Support Services, Inc. (Employer) committed unfair work practices because Claimant was alone with three supervisors when she was fired.[2] After review, we affirm.

Claimant worked as a part-time day program aide for Employer from December 18, 2017 through April 16, 2019, working 30 hours per week and earning

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntarily leaving work without cause of a necessitous and compelling nature).

[2] Claimant includes the additional issue of whether she committed willful misconduct because she had good cause for missing work. *See* Claimant Br. at 6. However, because Claimant was not discharged from her employment, as discussed fully below, that issue is not before this Court.

$13 per hour. Prior to April 16, 2019, Claimant had been excessively absent from work. On March 29, 2019, Employer placed Claimant on an employee improvement plan regarding her attendance. Claimant continued to be absent from work after being placed on the employee improvement plan for attendance. Claimant's position as a day program aide does not afford Employer an opportunity to find replacement staff members when Claimant is absent from work. Claimant's frequent absences had a negative impact upon the day program and prevented Employer from offering certain programs to its clients because Employer was short-staffed.

On April 16, 2019, Employer met with Claimant to discuss her ongoing attendance issues and to offer Claimant work in Employer's group homes which would provide more flexibility for Claimant in scheduling her hours and allow Employer to provide coverage for any absences Claimant may continue to incur. The group home position offered the same number of hours and pay rate she received in the day program. Additionally, Claimant could continue to work her day shift schedule, typically from 9:00 a.m. to 3:00 p.m. During the meeting, Claimant refused to accept work in Employer's group home, as she believed she would have to work nights and weekends, which she was unable to do because of childcare issues. Employer did not inform Claimant that she would need to work nights and weekends and met with her again prior to the end of her workday on April 16, 2019, hoping that she would reconsider its offer. Claimant again refused to work in the group home setting and informed Employer that she would not accept work other than in the day program. Pursuant to Employer's handbook, Employer asked Claimant to sign a resignation notice giving her two-weeks' notice. Claimant refused to do so.

Claimant applied for UC benefits. On May 8, 2019, the Altoona UC Service Center determined that Claimant was not eligible for UC benefits under Section 402(b) of the Law. Claimant appealed and a Referee held a hearing. On June 7, 2019, the Referee affirmed the UC Service Center's determination. Claimant

2

appealed to the UCBR.  On July 25, 2019, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[3, 4]

Claimant first argues that she did not voluntarily quit but, rather, she was wrongfully discharged.

Initially,

> [w]hether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment.  A claimant seeking [UC] benefits bears the burden of establishing either that (1) h[er] separation from employment was involuntary or (2) h[er] separation was voluntary but [s]he had cause of a necessitous or compelling nature that led h[er] to discontinue the relationship.  In other words, in order to be eligible for [UC] [benefits], the claimant bears the burden of proving separation from employment, whether voluntary or involuntary.

*Greenray Indus. v. Unemployment Comp. Bd. of Review*, 135 A.3d 1147, 1149-50 (Pa. Cmwlth. 2016) (quoting *Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013) (citations and footnote omitted)).

Further,

> [i]t is well-established law that '[a]n express resignation is not necessary to constitute a voluntary termination; conduct which is tantamount to a voluntary termination of

---

[3] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Review*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[4] On December 11, 2019, Claimant filed an Application to Compel [(Application)] consisting of the following: "I [Claimant] [w]ould like to make a[n] Application to Compel[] [d]ue to not [r]ec[ei]ving [the UCBR']s Br[ie]f Statement.  Commonwealth [C]ourt noted that it was submitted el[]ectronic[al]ly November 20th 2019."  Application at 2.  Because the UCBR's brief contains a certificate of service stating its brief was mailed to Claimant's record address, the Application is denied.

3

employment is sufficient.' *Shrum v. Unemployment Comp. Bd. of Review*, 690 A.2d 796, 799-800 (Pa. Cmwlth. 1997) (quoting *Sears, Roebuck & Co. v. Unemployment Comp. Bd. of Review*, . . . 394 A.2d 1329, 1332 ([Pa. Cmwlth.] 1978)).  This Court has held that '[c]**laimants who,** *while employed,* **refuse to accept an offer** *of continued* **employment are deemed to have quit their position**, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who 'voluntarily [leaves] work without cause of a necessitous and compelling nature.'' *Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 225 (Pa. Cmwlth. 2012) (quoting *Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review*, . . . 476 A.2d 516, 518 ([Pa. Cmwlth.] 1984)).

*Greenray Indus.*, 135 A.3d at 1150 (bold emphasis added).

Here, because of Claimant's excessive absenteeism, Employer offered Claimant continued employment in its group home program.  Claimant refused the offer because she believed working in the group home program would require her to work nights and weekends.  Specifically, Claimant testified, in relevant part:

I showed up to work on April 16th, 2019.  A typical day.  I had given [Employer] my medical notice that I had got [sic] from the doctor to come back to work. . . .  As soon as I came in [Employer's Day Program Manager] [] Terry Kuhn [(Kuhn)] had a whole bunch of papers for me to fill out.  Documents for consumers.  Approximately around I think it was 1:30 p.m. I was asked to go upstairs.  I was pulled into the office into a conference room and it was [] Kuhn, [Employer's Program Director] Vikki Nelson [Nelson] and [Employer's Executive Program Director] Mike Cappella were [sic] all in there.  They had told me that **my missing attendance did not work for a day program because they need consistency which I totally agree with** because the consumers do need consistency.  But I had given plenty of medical notices.  We were all understanding of what was going on and actually I had called and talked to [Kuhn] on the phone whenever I was off.  I think I was off about five days give or take and he -- . . . .  So at that point they had all told me that I wouldn't work for day program and **they wanted to offer me a position in group homes.**  I said I could not take that because they want me to work nights

4

and weekends. . . . That is the reason why I declined group homes. Because I declined group homes they then told me that I would not work for day program and was fired. . . .

Certified Record (C.R.) Item 9, Notes of Testimony, June 5, 2019 (N.T.) at 6-7 (emphasis added). Claimant continued:

I can't take group homes because of the kids. When I was originally hired and it says on this paper I was hired for day programming. That's what I was hired for. That was the availability that I gave them and in my opinion and this is just my opinion if you can't no longer offer me a job that I was originally assigned that shows right there that I was fired.

N.T. at 7.

However, Nelson related:

[Q] [] Nelson[,] did [Claimant] voluntarily resign her employment with [Employer]?

[A] Yes.

[Q] [] Nelson[,] do you recall the date when [Claimant] voluntarily resigned or resigned from [Employer]?

[A] 4/16/19.

[Q] On that date was there any attempt whatsoever to terminate [Claimant's employment]?

[A] No. There was absolutely no intent to terminate her [employment].

[Q] You said that there was -- well what was the purpose of meeting with [Claimant] on 4/16/19?

[A] To discuss her absenteeism and also to offer her employment in the group home to open up availability that she could actually get in her 30 hours per week.

[Q] Was it your belief that she would accept that agreement? That alternative?

5

[A] Yes[,] that was the purpose. The first meeting was for that purpose so we expected that she would do that because we've done this in the past. Other people have accepted. She did not. That's why we ended up having that second meeting just because I had to consult with [Employer's attorney Devin] Bennati.

[Q] So there was [sic] two meetings that day?

[A] There were two meetings that day. Yes.

[Q] What was discussed at the second meeting later that day?

[A] The second meeting we had hoped that after she processed it and had a few minutes to calm down that she would reconsider and take the employment in the homes to -- and then she was also -- she was asked if she wanted to write a resignation letter not to say hey I quit today. That was in our handbook you'll see that it's a two[-]week notice. We do a resignation letter is generally a two[-]week notice so we offered her to write that resignation letter. And again like I said we asked if she would reconsider working in the group homes because it would open up so much -- so many different times for her. **Other people from the day program who transferred over have still worked a 9 to 3 position so we never gave her a time that she had to work**. It was just extra hours that she could have.

N.T. at 12-13 (emphasis added).

The law is well established that "'[i]n [UC] proceedings, the [UCBR] is the ultimate fact finder, and it is empowered to resolve all conflicts in the evidence and to determine the credibility of witnesses.' *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 262 n.1 (Pa. Cmwlth. 2008)." *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 562 (Pa. Cmwlth. 2012). Here,

[w]hile [] [C]laimant testified at the time of hearing that she was told by [] [E]mployer that she would have to work nights and weekends and could not do so due to childcare constraints, **the Referee credit**[ed] [] [**E]mployer's testimony that the position offered to** [] **[C]laimant did**

**not require nights and weekends** and that [] [C]laimant would be able to continue to work the same schedule and would be offered more flexibility with the work in the group home setting and would also benefit [] [E]mployer by allowing [it] to be able to provide coverage for any of the absences [] [C]laimant may continue to incur.

Referee Dec. at 3 (emphasis added). "[T]he [UCBR] adopt[ed] and incorporate[d] the Referee's findings and conclusions[.]" UCBR Dec. at 1.

The record evidence establishes: (1) Claimant was working at the time Employer offered her work in its group homes; (2) Claimant knew that she would lose her job if she refused to work in group homes; and, (3) Claimant refused to work in group homes. Because Claimant refused to accept an offer of continued employment while employed, she is deemed to have quit her position. *Greenway Indus.* Thus, Claimant engaged in conduct that was tantamount to a voluntary termination. *Id.* Accordingly, the UCBR properly concluded that Claimant voluntarily quit her job.

Having ruled that Claimant voluntarily resigned from her employment, we must next determine whether she had a necessitous and compelling reason for doing so.

Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. A claimant who voluntarily quits h[er] employment bears the burden of proving that necessitous and compelling reasons motivated that decision. In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve [her] employment.

7

*Greenray Indus.*, 135 A.3d at 1151 (quoting *Middletown Twp.*, 40 A.3d at 227–28 (citations omitted)).

Here, Claimant testified that she refused to work in the group homes because she could not work nights and weekends. However, the UCBR found Employer's testimony credible that Claimant would not be required to work nights and weekends in the group homes. Thus, Claimant did not meet her burden of proving that her concern over working nights and weekends was real and substantial pressure that would cause a reasonable person to terminate her employment. Because a person with ordinary common sense would not refuse the alternative job offer, Claimant did not prove that she made a reasonable effort to preserve her employment. Thus, Claimant did not have a necessitous and compelling reason to terminate her employment. *Greenray Indus.* Accordingly, the UCBR properly denied Claimant UC benefits under Section 402(b) of the Law.

Claimant next asserts that the Referee improperly excluded an anonymous witness statement from evidence, and that Employer committed an unfair work practice because Claimant was alone with three supervisors during the April 16, 2019 meetings. However, although Claimant raised both of these issues in her "Statement of Questions Involved," Claimant Br. at 6, she did not mention either issue in the "Summary of Argument," Claimant Br. at 8, or the "Argument of Petitioner" in her brief. Claimant Br. at 9-10. It is axiomatic that "[w]hen a party appeals, but fails to address an issue in the brief, the issue is waived." *HPM Consulting v. Unemployment Comp. Bd. of Review*, 185 A.3d 1190, 1196 (Pa. Cmwlth. 2018) (quoting *Jimoh v. Unemployment Comp. Bd. of Review*, 902 A.2d 608, 611 (Pa. Cmwlth. 2006)). Accordingly, these issues are not properly before the Court.

For all of the above reasons, the UCBR's order is affirmed.

_____

ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tiffany J. Cunningham,                      :
                    Petitioner              :
                                            :
          v.                                :
                                            :
Unemployment Compensation                   :
Board of Review,                            :        No. 1090 C.D. 2019
                    Respondent              :


O R D E R

AND NOW, this 4th day of February, 2020, the Unemployment Compensation Board of Review's July 25, 2019 order is AFFIRMED. Tiffany Cunningham's Application to Compel is DENIED.


_____
ANNE E. COVEY, Judge