Greenray Industries, : 
                 Petitioner : 
                          : 
         v. : 
                          : 
Unemployment Compensation : 
Board of Review, : No. 2234 C.D. 2014
           Respondent : Submitted: May 22, 2015

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                         FILED: March 17, 2016

Greenray Industries (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) November 20, 2014 order reversing the Referee's decision and finding Alan W. Snavely (Claimant) eligible for UC benefits under Section 402(b) of the UC Law (Law).[1]  Employer presents two issues for this Court's review: (1) whether the UCBR erred in finding Claimant eligible for UC benefits under Section 402(b) of the Law; and (2) whether the UCBR erred in finding Claimant eligible for benefits under Section 402(e) of the Law.[2]  After review, we reverse.

Claimant was employed by Employer as a senior design engineer until April 30, 2014.  In September 2012, Employer asked all employees to sign a non-disclosure agreement (Agreement).  All of Employer's employees, except Claimant

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary employment termination).

[2] 43 P.S. § 802(e) (relating to willful misconduct).

and two other employees,[3] signed the Agreement. *See* Reproduced Record (R.R.) at 41a. Thereafter, Employer and Claimant negotiated the Agreement's wording over an 18-month period. Employer notified Claimant on April 25, 2014, that it would not negotiate further and, if Claimant refused to sign the Agreement by April 30, 2014, he would be discharged. The final version of the Agreement was four paragraphs. S*ee* R.R. at 69a-70a. Claimant refused to sign the Agreement because Claimant and two other employees are designing testing equipment as a private business venture[4] and he was concerned about the potential for Employer to have ownership of Claimant's personal intellectual property. Employer discharged Claimant on April 30, 2014 because he would not sign the Agreement.

Claimant applied for UC benefits. On June 5, 2014, the Altoona UC Service Center issued a Notice of Determination finding Claimant ineligible for UC benefits under Section 402(b) of the Law. Claimant appealed and a Referee hearing was held. On August 12, 2014, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On November 20, 2014, the UCBR reversed the Referee's decision. Employer appealed to this Court.[5]

Employer first argues that the UCBR erred in finding Claimant eligible for UC benefits under Section 402(b) of the Law. Specifically, Employer contends

---

[3] John C. Esterline and Terry L. Hitt were also discharged for not signing the Agreement. They applied for and were granted UC benefits. Employer appealed to this Court. Their cases were consolidated. *See Greenray Industries v. Unemployment Comp. Bd. of Review*, __ A.3d __ (Pa. Cmwlth. Nos. 1895, 1896 C.D. 2014, filed March 17, 2016).

[4] In Claimant's Initial Internet UC Claim, Claimant stated that he was engaged in a sideline business, "Esterline Research and Design, LLC," since "February 15, 2013." R.R. at 59a. Claimant worked 24 hours per week at this business. *Id.*

[5] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

that Claimant voluntarily resigned from his employment without a necessitous and compelling reason. We agree.

> Whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment. A claimant seeking unemployment compensation benefits bears the burden of establishing either that (1) his separation from employment was involuntary or (2) his separation was voluntary but he had cause of a necessitous or compelling nature that led him to discontinue the relationship. In other words, in order to be eligible for [UC] [benefits], the claimant bears the burden of proving separation from employment, whether voluntary or involuntary.

*Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013) (citations and footnote omitted). In the instant case, the UCBR's discussion on this issue consisted of one sentence: "Since [C]laimant did not quit, he cannot be denied benefits under Section 402(b) of the Law." UCBR Dec. at 2; R.R. at 100a. Clearly, this statement is erroneous.

It is well-established law that "[a]n express resignation is not necessary to constitute a voluntary termination; conduct which is tantamount to a voluntary termination of employment is sufficient." *Shrum v. Unemployment Comp. Bd. of Review*, 690 A.2d 796, 799-800 (Pa. Cmwlth. 1997) (quoting *Sears, Roebuck & Co. v. Unemployment Comp. Bd. of Review,* 394 A.2d 1329, 1332 (Pa. Cmwlth. 1978)). This Court has held that "[c]laimants who, *while employed,* refuse to accept an offer *of continued* employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who 'voluntarily [leaves] work without cause of a necessitous and compelling nature.'" *Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 225 (Pa.

3

Cmwlth. 2012) (quoting *Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review,* 476 A.2d 516, 518 (Pa. Cmwlth. 1984)).

In the instant case, Employer presented Claimant with an Agreement in 2012. After 18 months of negotiations Employer presented a final copy of the Agreement to Claimant along with a memorandum which provided, in relevant part:

> Whether you agree or disagree with this document, this issue is no longer open for debate or discussion. You are being given until the close of business on April 30, 2014, to sign both the Patent Assignment document and the Employee Non-Disclosure and Assignment document, and return the original of each one to [Employer's President] Wayne Bolton.
>
> **Should you fail or refuse to sign and return both documents (without any alterations or edits), your employment will be terminated**. Absent some extraordinary circumstance (which I do not foresee happening), this deadline will not be extended.

R.R. at 75a-76a (emphasis added). Claimant refused to sign the Agreement.

The record evidence establishes: (1) Claimant was working at the time he refused to sign the Agreement; (2) Claimant knew that he would lose his job if he refused to sign the Agreement; and, (3) Claimant refused to sign the Agreement. Because Claimant refused to accept an offer of continued employment while employed, he is deemed to have quit his position. *Middletown Twp.* Thus, Claimant engaged in conduct that was tantamount to a voluntary termination.[6] *Shrum.*

---

[6] We acknowledge this Court's recent opinion in *Ackerman v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 1156 C.D. 2015, filed March 2, 2016), wherein, the claimant who failed to sign a confidentiality agreement was found ineligible for unemployment compensation benefits for engaging in willful misconduct. However, in that case the employer fired the claimant for insubordination, i.e., failure to sign the agreement and failure to produce back-up files, and the appeal was based on the claimant's belief that he had good cause for not following the employer's explicit directives. Thus, a willful misconduct analysis was proper in *Ackerman.* In the instant case, Claimant's employment termination was based solely on Claimant's refusal to sign the Agreement where Claimant was working at the time; knew that he would lose his job if he refused to sign the Agreement; and, refused to sign the Agreement; and Employer appealed based on its

4

Accordingly, the UCBR erred in concluding therefrom that "[C]laimant did not quit." R.R. at 100a.

Having ruled that Claimant voluntarily resigned from his employment, we must next determine whether he had a necessitous and compelling reason for doing so.

> Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision. In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve [his] employment.

*Middletown Twp.*, 40 A.3d at 227-28 (citations omitted). Claimant testified at the Referee hearing that he refused to sign the Agreement because:

> Well, we were, for a couple of years, we had been working on a sideline business which was -- and actually, it was a hobby. There were myself and two other engineers had been working on ideas that we were considering doing on the side. And at the time, and even now, we don't really have a formal product, portfolio, or anything to really offer. But the -- what we had presented was a concern that anything we might develop, might be, you know, taken by this particular document that we were signing. It would allow [Employer] to have ownership of that. And while we were assured that that was never the case, that they had no intention of doing that, our concern was that they refused to alter the document, to clearly say that. The document contained language which was gray and could be

---

belief that Claimant voluntarily resigned from his employment without necessitous and compelling reasons. Therefore, a voluntary termination analysis is appropriate herein.

interpreted to embody non-compete language, as well as, infer the right of [Employer] to have ownership of any ideas that we might contemplate in our own time, using our own equipment. And we didn't think really that was fair. So we tried to negotiate with them. We presented several of these documents to them to try and address what we thought was fair to both parties, acknowledging [Employer's] rights and ownership of the ideas and our obligations as employees.

R.R. at 19a-20a.

The UCBR maintains in its brief that Claimant had good cause to quit because Employer made a substantial unilateral change to Claimant's employment. "An employer's unilateral imposition of a real and substantial change in the terms and conditions of employment provides a necessitous and compelling reason for an employee to leave work." *Phila. Hous. Auth. v. Unemployment Comp. Bd. of Review,* 29 A.3d 99, 101 (Pa. Cmwlth. 2011). When asked by his attorney if the assignment portion of the Agreement was "a new condition of employment?" Claimant answered: "Yes." R.R. 35a. However, when questioned by Employer's lawyer regarding whether he knew that confidential and trade secret information had to be protected, Claimant responded that he understood that. Claimant explained that he did not want the Agreement to be used against him, i.e., "[t]o allow any things that [Claimant] would produce on [his] own time to be taken by someone else [-] either the current employer, [his] current employer or some future employer that would possibly buy [Employer]." R.R. at 35a.

The alleged objectionable portion of the Agreement provided:

Notwithstanding anything in the previous paragraph, I understand and agree that nothing in this Agreement requires one to assign to [Employer] any invention, improvement, development, idea, discovery or copyrightable subject matter (collectively, the 'Personal Creation') I develop, or have developed, entirely on my own time, and without using any [Employer] equipment, supplies, facilities or trade secret information, unless either (i) **the Personal Creation relates directly to the business**

6

**of [Employer] or to [Employer's] actual or clearly anticipated research or development, or (ii) the Personal Creation results from any work performed by me for [Employer]**. (For sake of clarity and avoidance of doubt, I understand and agree that if either part (i) or part (ii) of the previous sentence does apply, I am still required to assign the Personal Creation to [Employer], even if I developed it entirely on my own time and without using any [Employer] equipment, supplies, facilities, or trade secret information.)

R.R. at 70a (emphasis added). When asked his understanding of what Employer was trying to protect in the above paragraph, Claimant responded:

> I have no idea. It's pretty clear what [Employer's] entitled to in terms of trade secrets and confidential information that are already protected intellectual property with the patents that they have. So I'm really not sure why it's necessary to say, we'll give you everything you do on your own time, unless we think you did it with our stuff or unless we think we want to do it in the future. I don't think that's necessary language to have in there.

R.R. at 29a. Claimant's belief that the Agreement contained language that was not necessary does not establish a unilateral change in his employment that was so substantial to him that he had cause of a necessitous and compelling nature to voluntarily terminate his employment. Further, Claimant did not meet his burden of proving that his concern that the Agreement may be used against him at some future time[7] was a real and substantial pressure that would cause a reasonable person to refuse to sign the Agreement. A person with ordinary common sense would not believe said language would cause him to turn over any personal intellectual property that was **not created in connection with Employer**. This is especially true here,

---

[7] "Any speculative concern of Claimant that [signing the Agreement] might have an adverse effect in the future is not cause of a necessitous and compelling nature to support the award of benefits under [S]ection 402(b) [of the Law]." *Middletown Twp.*, 40 A.3d at 235 (McCullough, J., concurring and dissenting). Here, Claimant was concerned about the future possibility of "[Employer] chang[ing] hands" and the new owners misinterpreting the Agreement. R.R. at 22a.

where Claimant testified that his sideline business "**had nothing to do with** [**Employer**.]"[8]  R.R. at 20a (emphasis added).

> **The Agreement that Claimant was required to sign was not a substantial unilateral change in the conditions of** [**his**] **employment** that would have placed real and substantial pressures on a reasonable person in [his] circumstances to quit.  **The Agreement did not change Claimant's rate of pay, nor did it change** [**his**] **job responsibilities**.  In fact, the Agreement did not  propose much of a change at all.  Both the Agreement and the [Employer's Handbook] restricted confidential employer information . . . .  The only difference seems to be that the . . . Agreement was more restrictive in barring the use or taking of any information from [Employer].  Arguably, these changes affect only Claimant's [side business] rather than the terms and conditions of [his] employment with [Employer].

*Shrum,* 690 A.2d 800-801 (emphasis added).  Thus, Claimant did not have a necessitous and compelling reason to terminate his employment.  Accordingly, Claimant is not eligible for UC benefits pursuant to Section 402(b) of the Law.[9]

For all of the above reasons, the UCBR's order is reversed.

_____
ANNE E. COVEY, Judge

---

[8] Employer maintains Claimant's website evidences otherwise.  *See* R.R. at 71a (website excerpt).

[9] Having determined that Claimant is not eligible for UC benefits under Section 402(b) of the Law, we need not address Employer's claim that Claimant is not eligible for UC benefits under Section 402(e) of the Law.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenray Industries,                    :
                        Petitioner      :
                                        :
            v.                          :
                                        :
Unemployment Compensation               :
Board of Review,                        :        No. 2234 C.D. 2014
                        Respondent      :

# O R D E R

AND NOW, this 17th day of March, 2016, the Unemployment Compensation Board of Review's November 20, 2014 order is reversed.

_____
ANNE E. COVEY, Judge