# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenray Industries,                        :
                      Petitioner          :
                                         :

              v.               :
                                           :

Unemployment Compensation    :
Board of Review,                         :    No. 1895 C.D. 2014
                   Respondent    :

Greenray Industries,                        :
                      Petitioner          :
                                           :

              v.               :
                                           :

Unemployment Compensation    :
Board of Review,                         :    No. 1896 C.D. 2014
                   Respondent    :    Submitted: May 22, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                        FILED: March 17, 2016

        Greenray Industries (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) November 22, 2014 orders affirming the Referee's decisions finding John C. Esterline (Esterline) and Terry L. Hitt (Hitt) (collectively, Claimants) eligible for UC benefits under Section 402(e) of the UC Law (Law).[1]  Employer presents two issues for this Court's review: (1) whether the UCBR failed to properly analyze this matter under Section 402(b) of

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to willful misconduct).

the Law;[2] and (2) whether the UCBR erred by granting Claimants UC benefits under Section 402(e) of the Law. After review, we reverse.

Employer employed Esterline as a full-time senior design engineer and Hitt as a full-time systems engineer/information technology manager until April 30, 2014. In September 2012, Employer asked all of its employees to sign a non-disclosure agreement (Agreement). All of Employer's employees, except Claimants and one other employee,[3] signed the Agreement. *See* Reproduced Record (R.R.) at 41a. Thereafter, Employer and Claimants negotiated the Agreement's wording over an 18-month period. Employer notified Claimants on April 25, 2014 that it would not negotiate further and, if employees refused to sign the Agreement by April 30, 2014, they would be discharged. The final version of the Agreement contained four paragraphs. R.R. at 153a-154a. Claimants refused to sign the Agreement because Claimants and one other employee were designing testing equipment as a private business venture[4] and they were concerned about the potential for Employer to have ownership of Claimants' personal intellectual property. Employer discharged Claimants on April 30, 2014 because they would not sign the Agreement.

Claimants applied for UC benefits. On May 27 and 29, 2014, the Altoona UC Service Center issued Notices of Determination finding Claimants ineligible for UC benefits under Section 402(b) of the Law. Claimants appealed and a Referee hearing was held for each Claimant. On July 1, 2014, in separate decisions,[5] the Referee reversed the UC Service Center's determinations finding

---

[2] 43 P.S. § 802(b) (relating to voluntary employment termination).

[3] Alan W. Snavely (Snavely) was also discharged for not signing the Agreement. Snavely applied for and was granted UC benefits. Employer appealed to this Court. *See Greenray Industries v. Unemployment Comp. Bd. of Review*, __ A.3d __ (Pa. Cmwlth. No. 2234 C.D. 2014, filed March 17, 2016).

[4] According to Hitt's Initial Internet UC Claim, Claimants had a sideline business, "Esterline Research and Design, LLC," since "February 15, 2013." R.R. at 140 a. Hitt worked 35 hours per week at this business. *Id.*

[5] The Referee's decisions contained identical findings of fact and conclusions of law.

2

Claimants eligible for UC benefits under Section 402(e) of the Law. Employer appealed to the UCBR which in two separate but identical decisions, adopted and incorporated the Referee's findings of fact and conclusions of law, and affirmed the Referee's decisions. Employer appealed to this Court.[6]

Employer first argues that the UCBR failed to properly analyze this matter under Section 402(b) of the Law. Specifically, Employer contends that Claimants voluntarily resigned from their employment without a necessitous and compelling reason. We agree.

> Whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment. A claimant seeking unemployment compensation benefits bears the burden of establishing either that (1) his separation from employment was involuntary or (2) his separation was voluntary but he had cause of a necessitous or compelling nature that led him to discontinue the relationship. In other words, in order to be eligible for [UC] benefits, the claimant bears the burden of proving separation from employment, whether voluntary or involuntary.

*Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013) (citations and footnote omitted). The Referee opined:

> The UC Service Center adjudicated this claim under Section 402(b) of the Law, based upon available information. Testimony presented at the appeal hearing indicated that Section 402(e) of the Law is the applicable Section of Law given the facts of this case. Since both parties gave consent for Section 402(e) of the Law to be considered, the Referee will rule accordingly.

---

[6] By December 3, 2014 order, this Court consolidated both cases for purposes of appeal.

"Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

3

Referee Dec. at 2.

It is well-established law that "[a]n express resignation is not necessary to constitute a voluntary termination; conduct which is tantamount to a voluntary termination of employment is sufficient." *Shrum v. Unemployment Comp. Bd. of Review*, 690 A.2d 796, 799-800 (Pa. Cmwlth. 1997) (quoting *Sears, Roebuck & Co. v. Unemployment Comp. Bd. of Review,* 394 A.2d 1329, 1332 (Pa. Cmwlth. 1978)). This Court has held that "[c]laimants who, *while employed,* refuse to accept an offer *of continued* employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who 'voluntarily [leaves] work without cause of a necessitous and compelling nature.'" *Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 225 (Pa. Cmwlth. 2012) (quoting *Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review,* 476 A.2d 516, 518 (Pa. Cmwlth. 1984)).

In the instant cases, Employer presented Claimants with an Agreement in 2012. After 18 months of negotiations, Employer presented a final copy of the Agreement to Claimants along with a memorandum which provided, in relevant part:

> Whether you agree or disagree with this document, this issue is no longer open for debate or discussion. You are being given until the close of business on April 30, 2014, to sign both the Patent Assignment document and the Employee Non-Disclosure and Assignment document, and return the original of each one to [Employer's President] Wayne Bolton.
>
> **Should you fail or refuse to sign and return both documents (without any alterations or edits), your employment will be terminated**. Absent some extraordinary circumstance (which I do not foresee happening), this deadline will not be extended.

R.R. at 159a (emphasis added). Claimants refused to sign the Agreement.

4

The record evidence establishes: (1) Claimants were working at the time they refused to sign the Agreement; (2) Claimants knew that they would lose their jobs if they refused to sign the Agreement; and, (3) Claimants refused to sign the Agreement. Because Claimants refused to accept an offer of continued employment while employed, they are deemed to have quit their positions. *Middletown Twp.* Thus, Claimants engaged in conduct that was tantamount to a voluntary termination. *Shrum.* Accordingly, the UCBR erred in adopting the Referee's conclusion that "Section 402(e) of the Law is the applicable Section of Law given the facts of this case."[7] Referee Dec. at 2.

Having ruled that Claimants voluntarily resigned from their employment, we must next determine whether they had a necessitous and compelling reason for doing so.

> Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision. In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the

---

[7] We acknowledge this Court's recent opinion in *Ackerman v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 1156 C.D. 2015, filed March 2, 2016), wherein, the claimant who failed to sign a confidentiality agreement was found ineligible for unemployment compensation benefits for engaging in willful misconduct. However, in that case the employer fired the claimant for insubordination, i.e., failure to sign the agreement and failure to produce back-up files, and the appeal was based on the claimant's belief that he had good cause for not following the employer's explicit directives. Thus, a willful misconduct analysis was proper in *Ackerman*. In the instant case, Claimants' employment termination was based solely on Claimants' refusal to sign the Agreement where Claimants were working at the time; knew that they would lose their jobs if they refused to sign the Agreement; and, refused to sign the Agreement; and Employer appealed based on its belief that Claimants voluntarily resigned from their employment without necessitous and compelling reasons. Therefore, a voluntary termination analysis is appropriate herein.

5

claimant made a reasonable effort to preserve [his] employment.

*Middletown Twp.*, 40 A.3d at 227-28 (citations omitted). Esterline testified that he could not sign the Agreement because the definition of "work" in Paragraph 3 was too broad. Specifically, Paragraph 3 of the Agreement provided:

> I hereby acknowledge and agree that as a part of my duties for [Employer]**, I may conceive of and/or reduce to practice inventions, improvements, developments, ideas or discoveries, whether patentable or not, and I may create copyrightable subject matter, such as software programming, artwork, or other written or electronic materials (collectively the 'Work').** In having access to [Employer's] equipment, supplies, facilities and [Employer] Confidential Information in connection with my employment duties for [Employer], I intend that [Employer] shall have full ownership of the Work, including the right to develop, exploit, assign, and license the Work in any manner whatsoever. [Employer] shall own, and I hereby irrevocably assign to [Employer], its successors and assigns, any and all worldwide right, title and interest I have or may obtain in the Work, together with any and all causes of action accrued in my favor for infringement of any of the rights in the Work. I agree to and will sign all lawful papers, execute all applications and make all rightful oaths and will generally do everything reasonable to aid [Employer], including its successors and assigns, to obtain and enforce its rights in the Work, and shall not contest or dispute [Employer's] ownership of or right to the same.

R.R. at 153a-154a (emphasis added). Hitt testified that he had a problem with Paragraph 4 of the Agreement which provided:

> Notwithstanding anything in the previous paragraph, I understand and agree that nothing in this Agreement requires one to assign to [Employer] any invention, improvement, development, idea, discovery or copyrightable subject matter (collectively, the 'Personal Creation') I develop, or have developed, entirely on my own time, and without using any [Employer] equipment, supplies, facilities or trade secret information, unless either (i) **the Personal Creation relates directly to the business**

6

**of [Employer] or to [Employer's] actual or clearly anticipated research or development, or (ii) the Personal Creation results from any work performed by me for [Employer]**. (For sake of clarity and avoidance of doubt, I understand and agree that if either part (i) or part (ii) of the previous sentence does apply, I am still required to assign the Personal Creation to [Employer], even if I developed it entirely on my own time and without using any [Employer] equipment, supplies, facilities, or trade secret information.)

R.R. at 154a (emphasis added). Specifically, Hitt was concerned that Claimants did not "know what [Employer is] anticipating so how . . . can [Claimants] assume what [they] were making wouldn't be anticipated by [Employer]." R.R. at 126a.

The UCBR "[found] and conclude[d] that the [A]greement was a substantial change in the terms and conditions of [C]laimant[s'] employment." UCBR Dec. at 1. "An employer's unilateral imposition of a real and substantial change in the terms and conditions of employment provides a necessitous and compelling reason for an employee to leave work." *Phila. Hous. Auth. v. Unemployment Comp. Bd. of Review,* 29 A.3d 99, 101 (Pa. Cmwlth. 2011). With respect to his knowledge of Employer's confidential information and trade secrets before the Agreement, Esterline testified as follows:

E[mployer's] L[awyer] Your Attorney just asked you about whether you've learned trade secrets while you were employed at [Employer] and you said you may have. Did you learn confidential information or trade secrets while you were employed at [Employer]?

C[laimant] Well I guess…

EL That's a yes or no. Did you?

C Yes.

EL Okay and did you learn confidential information or trade secrets before you were asked to sign the [Agreement]?

7

C Yes.

EL And what was your understanding of how you were supposed to treat that information prior to being asked to sign the [Agreement]?

C You keep it confidential.

EL And so at the time that you received the [Agreement] you already had knowledge of the fact that you were supposed to keep certain information or trade secrets confidential, correct?

C Correct.

R.R. at 30a. When Esterline was specifically asked about his understanding of "what the standard is when you're working for an employer [-] who owns the work that you perform while you're employed[,]" he responded:

My understanding would be like I've said a bunch of times here you know the stuff I do for them obviously is theirs. And as long as I'm not you know doing the same thing they do or competing with them what I do on my own time should be mine. . . .

R.R. at 35a-36a. Similarly, when Hitt was asked whether "during the course of employment with [Employer] . . . [was he] aware of the fact that [he was] expected to keep certain information confidential[,]" he replied: "Yes." R.R. at 121a. Both Claimants testified that what they did in their private business had nothing to do with what they did for Employer.[8] *See* R.R. at 35a, 122a.

Neither Esterline's belief that the Agreement did not contain an agreeable definition of work, nor Hitt's confusion regarding what Employer's anticipated research and development entailed, establish unilateral changes in their employment that were so substantial to them that they had cause of a necessitous and

_____

[8] Employer maintains Claimants' website evidences otherwise. *See* R.R. at 64a (website excerpt).

compelling nature to voluntarily terminate their employment.[9]  Further, Claimants did not meet their burden of proving that signing the Agreement, which included terms they did not fully comprehend, was a real and substantial pressure that would cause a reasonable person to refuse to sign the Agreement.  A person with ordinary common sense would not believe said language would cause him to turn over any personal intellectual property that was **not created in connection with Employer**.  This is especially true here, where Hitt testified that what they did in their private business "**had nothing to do with Employer**[;]" and Esterline testified that he never used any knowledge or experience gained from Employer in their hobby.  R.R. at 122a, 35a.

Contrary to the UCBR's conclusion:

> **The Agreement that Claimant**[s] **w**[ere] **required to sign was not a substantial unilateral change in the conditions of** [**their**] **employment** that would have placed real and substantial pressures on a reasonable person in her circumstances to quit.  **The Agreement did not change Claimant**[s'] **rate of pay, nor did it change** [**their**] **job responsibilities**.  In fact, the Agreement did not  propose much of a change at all.  Both the Agreement and the [Employer's Handbook] restricted confidential employer information . . . .  The only difference seems to be that the . . . Agreement was more restrictive in barring the use or taking of any information from [Employer].  Arguably, these changes affect only Claimant[s' side business] rather than the terms and conditions of [their] employment with [Employer].

---

[9] Notably, each Claimant contended that different sections of the Agreement imposed a unilateral change in his employment that was so substantial to him that each had cause of a necessitous and compelling nature to voluntarily terminate his employment.

9

*Shrum,* 690 A.2d 800-01 (emphasis added). Thus, Claimants did not have necessitous and compelling reasons to terminate their employment. Accordingly, Claimants are not eligible for UC benefits pursuant to Section 402(b) of the Law.[10]

For all of the above reasons, the UCBR's order is reversed.


_____
ANNE E. COVEY, Judge

---

[10] Having determined that Claimants are not eligible for UC benefits under Section 402(b) of the Law, we need not address Employer's claim that Claimants are not eligible for UC benefits under Section 402(e) of the Law.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenray Industries,                          :
                        Petitioner            :
                                              :
            v.                                :
                                              :
Unemployment Compensation                     :
Board of Review,                              :       No. 1895 C.D. 2014
                        Respondent            :

Greenray Industries,                          :
                        Petitioner            :
                                              :
            v.                                :
                                              :
Unemployment Compensation                     :
Board of Review,                              :       No. 1896 C.D. 2014
                        Respondent            :

## O R D E R

AND NOW, this 17th day of March, 2016, the Unemployment Compensation Board of Review's November 22, 2014 orders are reversed.

_____
ANNE E. COVEY, Judge