Dara Scarborough,                          :
             Petitioner       :
                                :
      v.                                 :
                                :
Unemployment Compensation       :
Board of Review,                           :   No. 1566 C.D. 2019
             Respondent        :   Submitted: August 28, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: December 22, 2020

Dara Scarborough (Claimant) petitions, *pro se*, for review from the August 29, 2019 order of the Unemployment Compensation Board of Review (Board) that affirmed the Referee's decision finding her ineligible for unemployment compensation benefits. The Board concluded that Claimant was ineligible for benefits because Claimant failed to show that she voluntarily quit her employment for a necessitous and compelling reason pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that a claimant is ineligible for compensation if her unemployment is due to her voluntarily leaving employment without cause of a necessitous and compelling nature. *Id.*

# I. Background

UST Global Inc. (Employer) employed Claimant full-time as a junior process associate from June 20, 2016, until October 5, 2018. Board Findings of Fact (F.F.) 1; Certified Record (C.R.) Item No. 13, Referee's Hearing Transcript of Testimony (T.T.) dated 6/18/19 at 7. Claimant began her employment as a trainee in a program administered by Employer known as "Step It Up America" (Program).[2] F.F. 2; T.T. at 7, 18. Through the Program, Claimant received training in computer programming, Employer introduced her to potential employers, and Employer provided Claimant with access to job listings. F.F. 3; T.T. at 18, 25. In January 2017, Claimant applied for a position with a client of Employer based in Chicago, but she was not hired because the client decided to consider only local candidates for the job. F.F. 5; T.T. at 9, 19. Claimant trained for a position with another potential employer, but at the end of her training period the potential employer declined to hire Claimant and her enrollment in the Program ended. F.F. 4; T.T. at 9, 19, 25-26.

Although Claimant was not selected for a position with Employer's client, Claimant remained a full-time employee as part of Employer's talent pool. T.T. at 19, 25-26. As explained by Employer's Human Resources Manager, Andrew Dufresne (HR Manager):

> once a candidate is identified and they are given the training program, we let our end [clients] with whom we have statements of work . . . select the candidate . . . . If [the candidate is] not selected, then we look for opportunities for them . . . . As soon as a candidate's

---

[2] Claimant testified that the Program, as she understood it, took inner city women and veterans, those typically underrepresented in STEM (science, technology, engineering and mathematics) careers, trained them and then placed them in a job related to their STEM training. T.T. at 18.

training program at one site ends, they are considered as a regular employee of [Employer], they're given a regular full-time offer letter with [Employer], and they are identified for opportunities. If they are not fit for opportunity when they are in the talent pool . . . the entire list of opportunities in the [United States] [is] given to them. It is up to them to apply for the positions and be considered for those positions . . . .

T.T. at 25-26. Claimant continued her training in computer programming from April 15, 2018, until October 2018. F.F. 6; T.T. at 8, 18, 21-22. Although she was not performing work for any of Employer's clients, she continued to submit timesheets to Employer, and Employer continued to pay wages to Claimant based on her timesheets through sometime in September 2018. F.F. 6; T.T. at 10-11.

On September 26, 2018, Employer's head of North America resource management, Vandana Bhatia (RMG Head),[3] who was responsible for managing the talent pool, contacted Claimant by email. T.T. at 10-11. In the email, RMG Head indicated that Claimant had completed her last assignment "a while ago" and her availability for work had "gone unnoticed" due to manager changes. F.F. 7; C.R. Item No. 3, T.T. at 10-11, 28. RMG Head informed Claimant that Employer tried to reach Claimant "a couple of times" and had left a voice message to contact Employer, leaving phone and email contact information for the two managers. F.F. 8; C.R. Item No. 3. However, Claimant did not respond to RMG Head's September 26, 2018 email. F.F. 9; T.T. at 10, 24, 28.[4]

_____

[3] Employer's RMG head changed her last name from Rayarangoth to Bhatia at some point between the events giving rise to Claimant's claim and the hearing before the Referee. T.T. at 28.

[4] The September 26, 2018 email provided:

**Subject:** Please Call
**Importance:** High

Due to Claimant's failure to respond to the September 26, 2018 email, the following day, September 27, 2018, Employer's managers tried to reach Claimant a second time by telephone and left her a voicemail message. F.F. 10; C.R. Item No. 3, T.T. at 11, 24. Again, RMG Head followed up with an email to Claimant, which included her prior email, and requested that Claimant contact Employer. F.F. 10; C.R. Item No. 3.[5] Claimant failed to respond to the September 27, 2018 email. F.F. 11; T.T. at 24, 28.

---

Hello Dara,

We understand that you were released from your previous assignment a while ago; however, due to manager changes this went unnoticed.

While reconciling the allocation reports, your name came up as unallocated and we thus found that you have not been on an assignment, but paid as an active employee all throughout.

We tried reaching you a couple of times on your phone number . . . and left a voice message to contact us.

Can you please call me . . . or Arun Joseph . . . at the earliest?

Regards,
Vandana

C.R. Item No. 3.

[5] The September 27, 2018 email provided:

**Subject:** FOLLOW UP1; Please Call

Hello Dara,

Arun Joseph and I tried to reach you again on your cell . . . this morning and left a message asking you to call us at the earliest[.] Please call me . . . or Arun Joseph . . . or request you to respond to our e-mail at the earliest[.]

Regards,
Vandana

4

Finally, on October 3, 2018, Employer's managers tried to reach Claimant for a third time by telephone, and again, left a voicemail message.  F.F. 12; C.R. Item No. 3.  RMG Head sent a third email to Claimant requesting that Claimant contact Employer before the end of the day.  F.F. 12; C.R. Item No. 3.[6]  Claimant failed to respond to Employer's October 3, 2018 telephone call or email message. F.F. 13; T.T. at 28.  As a result of these failed attempts to reach Claimant, Employer concluded that Claimant quit her employment by job abandonment.  C.R. Item No. 16; Board's Order mailed September 29, 2019; T.T. at 7.

Subsequently, Claimant applied for benefits with the Erie Unemployment Compensation Service Center (Center).  The Center issued a notice

---

C.R. Item No. 3.

[6] The October 3, 2018 email provided:

**Subject:** RE: FOLLOW UP 2: Please Call

**Importance: High**

Hello Dara,

Arun Joseph ad [sic] I tried to reach you again this afternoon on your cell . . . and we left a detailed voice message asking you to call us back at the earliest.

We got to know from our payroll team that you have been submitting time cards and UST has been paying you for the time recorded.  Since we have not heard from you even after multiple follow-ups, and since you do not have an allocation; we are suspending your payroll going forward.  Please get in touch with me . . . or Arun Joseph . . . by the end of the day today.

Regards,
Vandana

C.R. Item No. 3.

of determination finding that Claimant "voluntarily quit because of unknown reasons" and denying benefits pursuant to Section 402(b) of the Law. C.R. Item No. 5, Notice of Determination dated 4/25/19 (Notice of Determination) at 1. Claimant appealed the Center's decision to the Referee, asserting that she did not "voluntarily quit" but was "let go due to a lack of work." C.R. Item No. 6, Petition for Appeal at 1.

The Referee held a hearing on the matter at which Claimant was represented by counsel and testified on her own behalf. C.R. Item No. 13. Employer had a non-legal representative present and had three witnesses testify on its behalf, specifically HR Manager, RMG Head, and a manager involved with the talent pool, Arun Joseph (Talent Pool Manager). *Id.* After the hearing, the Referee issued a decision and order affirming the Center's determination finding Claimant ineligible for benefits. C.R. Item No. 14; Referee's Decision/Order mailed 6/20/19. The Referee explained:

> At the hearing . . . Claimant argued that she did not voluntarily leave her position.
>
> In her testimony, . . . Claimant acknowledged that she received []Employer's email messages dated September 26 and 27, 2018 and October 3, 2018. She testified that she tried to respond to the messages by telephone and that . . . Employer's managers failed to respond to her calls. She also testified that she did not respond to the messages by email because she had focused on responding via phone and didn't realize that an email response was possible or appropriate.
>
> . . . Claimant provided no documentary evidence of her phone calls to . . . Employer.

. . . Employer['s] witnesses testified that they did not receive any response from . . . Claimant, neither [sic] by phone or email.

The Referee does not find . . . Claimant's testimony credible and resolves the conflict in testimony in [] Employer's favor.

Based on the testimony received at the hearing, the Referee concludes that . . . *Claimant initiated the separation from employment by her refusal to respond to inquiries from . . . Employer.*
. . . .

While the Referee credits . . . Claimant's testimony that the open positions communicated to her on September 20 and 27, 2018[,] may not have been appropriate for her, she has failed to demonstrate that she had no other real choice but to leave her employment and that she took all necessary and reasonable steps to preserve her employment.

As a result, the Referee concludes that . . . Claimant . . . has failed to meet the burden of demonstrating necessitous and compelling cause; therefore, benefits must be denied under Section 402(b) of the Law.

Referee's Decision/Order at 3-4 (emphasis added). Claimant appealed to the Board, which issued an order affirming the Referee's decision. C.R. Item No. 16; Board's Order mailed 8/29/19. The Board adopted and incorporated the Referee's conclusions, and further stated: "The Board would add to [the Referee's] Finding of Fact No. 10[7] that . . . [C]laimant was instructed to either call *or email* . . .

---

[7] The Referee's Finding of Fact 10 provided:

Due to . . . Claimant's failure to respond to the September 26, 2018 email, the following day i.e., September 27, 2018[,] Employer's managers tried to reach . . . Claimant a second time by telephone.

7

[E]mployer and she failed to do either. The Board adds a finding, which shall read, '[C]laimant quit her employment by job abandonment.'" *Id*. (emphasis in original). Claimant then brought this appeal.[8]

## II. Issue

Although Claimant asserts her arguments as separate issues, she essentially contends that the evidence demonstrates she did not abandon her job, but was fired.[9]

---

> When they were unable to reach . . . Claimant by phone, a voice mail message was left for . . . Claimant. In addition, one of the managers sent another email message to . . . Claimant including her prior message and again requesting that . . . Claimant contact . . . Employer, and repeating the phone contact information for the managers.

Referee's Decision/Order at 2.

[8] This Court's review is limited to determining whether constitutional rights were violated, whether errors of law were committed, and whether findings of fact are supported by substantial evidence. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 262 n.1 (Pa. Cmwlth. 2008). In unemployment compensation proceedings, the Board is the ultimate finder of fact. *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018).

[9] Claimant also asserts that the Board erred by adopting the Referee's "finding" of willful misconduct as this issue is waived. Claimant's Br. at 17, 28-30. Claimant argues that Employer did not discharge Claimant for willful misconduct and Employer never raised the issue before the Board. *Id*. at 28. The Board states in its brief that "Employer consistently maintained Claimant quit by job abandonment and did not assert an alternative theory as to what actions on Claimant's part rose to the level of willful misconduct; therefore, the Board agrees that under *Wing v.* [*Unemployment Compensation Board of Review*], 436 A.2d 179 (Pa. 1981), Employer waived the issue of misconduct." *Id*. at 26 n.11.

We agree with the parties that the issue of willful misconduct was waived. However, the Referee and the Board never reached that issue. The Referee's order, which the Board affirmed, was specifically limited to finding Claimant ineligible for benefits under Section 402(b) of the Law. The Referee stated that *if* she had found that Employer terminated Claimant's employment and *if* she had made a ruling under Section 402(e) of the Law, 43 P.S. § 802(e), relating to willful misconduct, Claimant would still be ineligible for unemployment benefits. Nonetheless, the Referee made no such ruling here. Accordingly, this argument is moot.

### III. Discussion

Whether a claimant's separation from employment is a result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment. *See Greenray Indus. v. Unemployment Comp. Bd. of Rev.*, 135 A.3d 1140, 1143 (Pa. Cmwlth. 2016). A claimant seeking unemployment compensation benefits bears the burden of establishing either that (1) her separation from employment was involuntary, or (2) her separation was voluntary but she had cause of a necessitous or compelling nature that led her to discontinue the relation. *Id.*; *see also Key v. Unemployment Comp. Bd. of Rev.*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996) ("it is a claimant's burden to prove that her separation from employment was a discharge"). Further, "[a]n express resignation is not necessary to constitute a voluntary termination; conduct which is tantamount to a voluntary termination of employment is sufficient." *Shrum v. Unemployment Comp. Bd. of Rev.*, 690 A.2d 796, 799 (Pa. Cmwlth. 1997).

Here, Claimant does not contend that she voluntarily quit for a necessitous and compelling reason. She asserts that she did not quit at all, but was fired. We find her arguments without merit.

Claimant first cites and relies on "new evidence" she obtained after the Referee's hearing and the Board's review, resulting from a wage complaint she filed against Employer with the Bureau of Labor Law Compliance in August 2019. Claimant's Br. at 19-20. Specifically, Claimant cites an August 30, 2019 email allegedly demonstrating that she worked without any periods of absence from September 17, 2018, through October 5, 2018. *Id.* However, when reviewing a matter on appeal, this Court cannot consider documents appended to a party's brief

that are not part of the certified record. *Twp. of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018) ("The law is well settled that an appellate court may not consider documents that are not part of the certified record.") (citing *Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011)). As a result, we cannot consider the "new evidence" presented by Claimant.

Next, Claimant argues that she was discharged by Employer with "immediacy and finality" by Employer's October 5, 2018 email. Claimant's Br. at 21. Claimant contends the October 5th email shows that Employer discharged her under its job abandonment policy, which provides for termination where an employee has been absent for three or more consecutive days. *Id*. at 21-26. Relying on the contents of the October 5th email, Claimant asserts that Employer failed to prove that she was absent at all, much less for three or more consecutive days. *Id*. at 23-24.

Employer's October 5th email provided:

Dear Dara,

This communication is being sent to your e-mail address in an effort to make sure that it reaches you in a timely manner.

We tried to reach you at your phone number . . . and also emails . . . and have left multiple messages on September 26th, September 27th, October []3rd and October 4th. We are [sic] yet to receive any response from you.

Per company policy, you should be processed as a *resignation* and terminated from the Company on the third consecutive day of absence.

We are processing *your separation as a resignation* per policy on Job Abandonment.

10

Sincerely,
Arun Joseph
Senior Manager - HR

C.R. Item No. 11, Referee Exhibit (Ex.) 20 (emphasis added). Contrary to Claimant's assertion, the contents of the email support the conclusion that Employer construed Claimant's refusal to respond to the earlier communications as a resignation from her employment. *See Fishel v. Unemployment Comp. Bd. of Rev.*, 674 A.2d 770, 772 (Pa. Cmwlth. 1996) (providing that "[w]here the employee, without action by employer, resigns, leaves, or quits employment, that action amounts to voluntary termination for purposes of unemployment compensation").

Claimant next challenges the Board's findings of fact, asserting that they are not "supported by substantial evidence" of record. Claimant's Br. at 35-49. Claimant is correct that this Court is bound by the Board's findings only if they are supported by substantial evidence. *See* 2 Pa.C.S. § 704. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1387 (Pa. 1985) (internal quotations omitted). To determine whether there is substantial evidence to support the Board's findings, we must examine the testimony

> in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole.

*Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

11

Although Claimant challenges most of the Board's findings, *see* Claimant's Br. at 36-42, the crux of her complaint is that the Board's findings are "not in line with what constitutes a violation of Employer's [j]ob [a]bandonment policy." *Id*. at 42. However, as discussed above, the Board did not base its decision on a violation of Employer's policy. Rather, the Board concluded that Claimant failed to meet her burden of showing a necessitous and compelling cause for leaving her employment because she did not show that she had "no other real choice but to leave her employment" or that she took "all necessary and reasonable steps to preserve her employment." Referee's Decision/Order at 3; Board's Order. Thus, Claimant's insistence that she did not quit, but was fired, fails to counter the basis of the Board's decision.

Moreover, the Board based its conclusion on its findings that Claimant *initiated* her separation from employment when *she* failed to respond to inquiries from Employer on September 26 and 27, 2018, and October 3, 2018. These findings are supported by substantial evidence of record. The Board found, and there is no dispute, that Employer attempted to contact Claimant on three occasions, September 26 and 27, 2018 and October 3, 2018, by both telephone and email, and instructed Claimant to contact either RMG Head or HR Manager "at the earliest." F.F. 7, 8, 10, 12; C.R. Item No. 3. Claimant acknowledged that she received these messages. T.T. at 22-23. However, Claimant argues that two of the calls were made outside of work hours, that she returned the calls nonetheless, and that Employer did not indicate the reason for its communications. *Id*. at 39-40.

Contrary to Claimant's assertion, all three of Employer's witnesses testified that they received no response from Claimant when they attempted to reach her. T.T. at 10, 24, 28. This testimony constitutes substantial competent evidence

to support the Board's finding of fact that Claimant failed to respond to the September 26th and 27th emails and the October 3rd email and phone call. *See* F.F. 9, 11, 13.

Claimant, in essence, asks this Court to substitute its own findings for those of the Board. Because there is substantial competent evidence in the record sufficient for a reasonable mind to conclude that Claimant did not respond to Employer's telephone calls and email messages, we cannot disturb the Board's credibility determination on appeal or substitute our own findings for those made by the Board. *Cambria Cnty. Transit Auth. (CAMTRAN) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (providing that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review").

### IV. Conclusion

Based on the foregoing, we agree with the Board that Claimant failed to meet her burden of showing that she had a necessitous and compelling reason for voluntarily terminating her employment. Accordingly, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dara Scarborough,                          :
                    Petitioner              :
                                            :
            v.                              :
                                            :
Unemployment Compensation                   :
Board of Review,                            :        No. 1566 C.D. 2019
                    Respondent              :


O R D E R


        AND NOW, this 22nd day of December, 2020, the August 29, 2019

order of the Unemployment Compensation Board of Review is AFFIRMED.


                                _____
                                CHRISTINE FIZZANO CANNON, Judge