Veronica Walker,          :
       Petitioner      :
                       :
      v.              :
                       :
Unemployment Compensation Board  :
of Review,              :   No. 587 C.D. 2020
        Respondent   :   Submitted: January 29, 2021

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: March 10, 2021

Veronica Walker (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 20, 2020 order affirming the Referee's decision denying her UC benefits under Section 402(b) of the UC Law (Law).[1] Claimant presents one issue for this Court's review: whether the UCBR erred by determining that Claimant did not have a necessitous and compelling reason for voluntarily terminating her employment. After review, we affirm.

UPMC Home Health Care (Employer) employed Claimant as a Hospice Home Care Aide out of Employer's Erie office from April 17, 2000 until January 6, 2020. Claimant worked from 8:00 a.m. until 4:30 p.m. visiting clients in Erie, Pennsylvania. Claimant was reimbursed for travel expenses between clients, but not for trips from her home to her first client or from her last client to her home.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

On November 21, 2019, a fire damaged Claimant's house and she temporarily relocated to Franklin, Pennsylvania. Employer offered Claimant work at its Venango office, which was located closer to Franklin. Claimant accepted the offer. However, shortly after accepting the position, the hours changed to a split shift from 9:00 a.m. until 11:00 a.m. and again from 6:00 p.m. until 10:30 p.m. Claimant was unhappy with the hours, because her take-home pay was less and she was not reimbursed for travel expenses since she did not visit multiple clients during the assigned morning or evening hours.

On January 3, 2020, Employer met with Claimant and explained that Claimant would have to complete an application and commit to employment at the Venango office, or return to the Erie office. Employer's standard policy prohibited Claimant from transferring for six months after accepting the position at the Venango office. Claimant did not want to commit to six months at the Venango office because a hospice position she preferred was opening in March 2020, and she was not willing to return to the Erie office while living in Franklin due to the 1 hour, 20-minute commute. Claimant voluntarily terminated her employment on January 6, 2020.

Claimant applied for UC benefits. On January 19, 2020, Claimant completed a Claimant Questionnaire and an Employment Separation Questionnaire (Employment Questionnaire). In the Claimant Questionnaire, Claimant reported that she was "Forced to Resign." Certified Record (C.R.) at 12. In the Employment Questionnaire Claimant stated:

> 11-25-[20]19 I asked for [and] received a 2 week personal leave. **Found temporary suitable**[] **housing 1** [**hour**,] **30 minutes from my job**.[2]

---

[2] Claimant admitted in testimony before the Referee that "[f]rom Franklin to the [Erie] office is about an hour and 20 to 30 minutes." C.R. at 70.

2

12-09-[20]19 **Asked and was granted to be transferred** to [the Venango office] . . . Franklin[,] P[A][,] 30 min[utes] from temporary housing.

12-11 thru 12-31-[20]19 Was assigned a job . . . that was not comparable to my job [in Erie]. I worked this job until I was forced to either accept this position permanently or resign.

1-6-2020 **Forced to resign**[.]

C.R. at 14 (emphasis added). On January 31, 2020, in an oral statement, Claimant admitted the following to the Department of Labor and Industry:

[Q:] [W]**hy did you not find an ap**[artment] **or house closer to where you were working**?[]

[**Claimant:**] [**I**] **did not have enough time to look so** [**I**] **was not able to find anything close to where** [**I**] **was working**. [**I**] **have 4 dogs** [**and I**] **need a furnished place**. [**T**]**here was nothing available**. [**I**] **am hoping to eventually be able to move back into my house**.

[Q:] [W]hy was the job [in Venango] not comparable to the previous job you had?[]

[Claimant:] [I]t was less hours so less pay. [T]hey didn't pay mileage and [I] was having to work split shifts. [I] never had to do that before [and I] was paid mileage.

[Q:] [W]hy do you say you were forced to resign?[]

[Claimant:] [I] guess [**I**] **was not forced to resign** but [I] could not take either of the jobs.

C.R. at 22 (emphasis added).

In an Employer Questionnaire, Employer explained that

[Claimant] communicated she didn't like [the] hours and work at [the Venango office]. . . .

Her [full-time] [a]ide work [in Erie] was still available to her and operations offered her to resume this work but she didn't want to drive from Franklin, PA to her [a]ide job [in Erie]. She resigned.

3

C.R. at 19.

On February 3, 2020, the Indiana UC Service Center (UC Service Center) determined that Claimant was not ineligible for UC benefits under Section 402(b) of the Law. Employer appealed, and a telephonic Referee hearing was held on March 9, 2020. On March 11, 2020, the Referee reversed the UC Service Center's determination, concluding that Claimant did not establish a necessitous and compelling reason for quitting.

Claimant appealed to the UCBR. On May 20, 2020, the UCBR adopted the Referee's findings and conclusions, and affirmed the Referee's decision, noting: "[C]laimant contends that her hours had increased with substantially less take-home pay[;] [h]owever, the changes in [Claimant's] working conditions were offered as an accommodation for her relocation, which she accepted." C.R. at 103. Claimant appealed to this Court.[3]

> Preliminarily, Section 402(b) of the Law states that an employee shall be ineligible for compensation for any week '[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]' 43 P.S. § 802(b). Accordingly, '[a] claimant seeking [UC] benefits bears the burden of establishing either that (1) his separation from employment was involuntary or (2) his separation was voluntary but he had cause of a necessitous or compelling nature that led him to discontinue the relationship.' *Greenray Indus. v. Unemployment Comp. Bd. of Rev*[.], 135 A.3d 1140, 1143 (Pa. Cmwlth. 2016) (quoting *Watkins v. Unemployment Comp. Bd. of Rev*[.], 65 A.3d 999, 1004 (Pa. Cmwlth. 2013)).

---

[3] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

This Court has ruled:

> When making a determination of whether a person voluntarily left his employment, we must examine the totality of the facts surrounding the cessation of employment. **An employee's failure to take all necessary and reasonable steps to preserve his employment will result in a voluntary termination of employment**.
>
> *Thiessen v. Unemployment Comp. Bd. of Rev*[.], 178 A.3d 255, 260 (Pa. Cmwlth. 2018) (emphasis added; citations omitted).

*Spivey v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 433, 436 (Pa. Cmwlth. 2020) (original emphasis omitted; emphasis added).

> [An employee's] burden [of establishing a necessitous or compelling reason for voluntarily terminating employment] may be met by showing that the circumstances at the time of the decision produced both a real and substantial pressure to leave the employment and that a reasonable person would have been similarly compelled under the same circumstances.

*Leason v. Unemployment Comp. Bd. of Rev.*, 198 A.3d 509, 512 (Pa. Cmwlth. 2018).

Claimant argues that she met her burden of proving a necessitous and compelling cause for leaving her job. This Court disagrees. In *Musguire v. Unemployment Compensation Board of Review*, 415 A.2d 708 (Pa. Cmwlth. 1980), this Court held that a 3-hour, 60-mile daily commute did not constitute a necessitous and compelling reason to terminate employment.[4] Musguire was a truck driver whose job required 10 to 12 hours of driving each day. He argued that an additional 3-hour daily commute to work and back would create a potential safety hazard. The *Musguire* Court explained:

---

[4] *See also Kieley v. Unemployment Comp. Bd. of Rev.*, 471 A.2d 1345 (Pa. Cmwlth. 1984) (50-mile drive to work from home was not a necessitous and compelling reason to quit).

5

> **Transportation inconveniences may provide a necessitous and compelling cause for leaving employment only where they are 'so serious and unreasonable as to present a virtually insurmountable problem** and the claimant must demonstrate that he or she took reasonable steps to remedy or overcome the transportation problems prior to severing the employment relationship.' *Lee v. Unemployment Comp*[.] *B*[*d.*] *of Rev*[.], . . . 401 A.2d 12, 13 ([Pa. Cmwlth.] 1979)[.]

*Musguire*, 415 A.2d at 709 (emphasis added); *see also Shaffer v. Unemployment Comp. Bd. of Rev.*, 531 A.2d 533 (Pa. Cmwlth. 1987). The *Musguire* Court held that the "claimant presented no specific or empirical evidence as to the impossibility of solving the admittedly substantial commuting problem[]" and, thus, rejected Musguire's contention that he had a necessitous and compelling reason to terminate his employment. *Musguire*, 415 A.2d at 709.

Here, Claimant testified:

> I had a house fire which I've never experienced before. I asked for two weeks of personal time which I was granted. I didn't realize how hard it would be to obtain housing for temporary month[-]to[-]month [sic] furnished, and I have four pets. So I was not prepared to come back to work after two weeks and I asked for a transfer to Franklin which I was granted. I worked there -- I was -- I was -- I just - my boss just said yes, they can use you. So I was not aware that I had to apply for the position which came about three to four weeks later. Because they needed to open my position in Erie[,] they wanted me to apply in Franklin full[-]time to free up my position in Erie. I was offered my job back in Erie but financially and physically to drive an hour and a half and then drive my daily route, [sic] not possible, just not possible. So I asked for an additional personal leave and I was not granted, [sic] that I had to resign or sign the position in Franklin. And if I did that I was not allowed to transfer to any other job that would come open for six months. I was told there would -- would [sic] be a position in the [h]ospice coming open in March but I couldn't apply for it because I had to apply full-time for the [h]ome [h]ealth position that I was working where they needed me.

C.R. at 68-69.

> Claimant further explained:
>
> I was backed up against the wall because they needed my position opened in Erie and they wanted me to take the position in Franklin full-time or resign. My thing [sic] was I didn't want to take that position full-time. An opening was coming in March. I would have worked until March when a similar position in [h]ospice became available but I -- if I stayed in Franklin I would've had to apply for the position and not be transferred for six months.

C.R. at 72.

> On cross-examination Claimant admitted:
>
> [Employer's counsel:] Isn't [it] true that you secured housing in Franklin, PA? So now you are living there, right? So you are living in Franklin, PA?
>
> [Claimant:] That was -- that was temporarily until I could find something close to Erie but it's very difficult to find housing within a few weeks for a month[-]to[-]month lease and furnished. I had no furniture and I had . . . pets so I -- and two weeks didn't give me enough time to find housing.
>
> . . . .
>
> [Employer's Counsel:] Okay, thank you. Isn't [it] true that your employer gave you the option to either, you know, stay in the position in Franklin, PA or to return to your regular position?
>
> [Claimant:] Correct.

C.R. at 69-70.

Although Claimant had several reasons for which she did not want to commit to the Venango office, apart from claiming the commute would be too lengthy, Claimant did not offer evidence to explain why she could not have returned to her Erie position and driven 1 hour and 20 minutes to 1 hour and 30 minutes each

7

way per day (a commute time less than the claimant's in *Musguire*). In fact, had Claimant been willing to do so, she could have applied in March for the open position she desired. Had she obtained the position, her lengthy commute for the Erie position would have only lasted approximately 3 months until she began the new position. Moreover, beyond stating that as an owner of multiple dogs she had difficulty finding temporary housing, Claimant did not describe her reasons for concluding that the **only** acceptable temporary housing available was almost an hour and a half from her job in Erie. Finally, Claimant did not explain why she could not return to the Erie job while she looked for housing in Erie, to reduce the length of time she would have to commute from Franklin.[5]

Based on the totality of the circumstances, Claimant did not demonstrate a necessitous and compelling reason to terminate her employment. Claimant did not establish that the proposed daily commute to Erie from Franklin was a "virtually insurmountable problem" and did not "demonstrate that . . . she took reasonable steps to remedy or overcome the transportation problems prior to severing the employment relationship." *Musguire*, 415 A.2d at 709. Accordingly, this Court is constrained to hold the UCBR properly concluded that Claimant voluntarily terminated her employment without a necessitous and compelling reason.

For all of the above reasons, the UCBR's decision is affirmed.


_____
ANNE E. COVEY, Judge

---

[5] Although Employer denied Claimant's request for personal leave to look for housing in Erie, there is nothing in the record demonstrating that Claimant was unable to search for housing on her days off or online.

Veronica Walker,                      :
               Petitioner          :
                       :
          v.                       :
                       :
Unemployment Compensation Board        :
of Review,                            :     No. 587 C.D. 2020
               Respondent        :

# O R D E R

AND NOW, this 10th day of March, 2021, the Unemployment Compensation Board of Review's May 20, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge